**SWANSON v. LUCKENBACH S. S. CO., Inc.**

(Circuit Court of Appeals, Ninth Circuit.
February 28, 1927. Rehearing Denied
March 28, 1927.)

No. 5028.

Shipping ⬯84(3)—Shipowner held not chargeable with negligence for failing to change its usual method of loading to render ship safer for licensee on board.

Plaintiff, an employee of a lumber company, was superintending the delivery of different consignments of lumber to defendant for carriage on one of its ships. It was his duty to see that each consignment was properly made up, delivered to the dock, segregated, and correctly marked. He performed no service for defendant, and his presence on the ship in the performance of his work was as licensee, or at most as an invitee. Held, that defendant owed him no duty to change its customary method of loading, or to guard against his carelessness, and was not liable for his injury while walking along the dock side of the deck by being struck by the accidental swinging of a sling load of long timbers being carried from the dock to a hatchway, where he saw the sling and could readily have avoided any danger by passing on the other side of the hatch.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law by S. A. Swanson against the Luckenbach Steamship Company, Inc. Judgment for defendant, and plaintiff brings error. Affirmed.

Jay Bowerman, John P. Kavanaugh, William P. Lord, and Arthur I. Moulton, all of Portland, Or., and John D. Short, of San Francisco, Cal., for plaintiff in error.

Wood, Montague & Matthiessen, Erskine Wood, and Gunther F. Krause, all of Portland, Or., for defendant in error.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Plaintiff was injured at Westport, Or., on July 1, 1924. The A. C. Dutton Lumber Company, his employer, was delivering lumber to the defendant for transportation by its steamship Lewis Luckenbach to divers consignees in New York. It had delegated to plaintiff the duty of seeing that the material to fill the orders was gotten out by the mills and delivered at the proper places upon the dock, and also, at the ship, of observing whether any of it was broken or bruised in loading, and whether the several orders, after being received on board, were correctly segregated and marked. He was not employed by, and rendered no service to, the defendant, nor did he have anything to do with the stowing of the cargo in the sense of trimming the ship. Defendant itself had a supercargo, and two of its own employees were engaged in marking off the lumber in the hold. Upon receiving the shipments, it gave to the consignor bills of lading, imposing upon it, and not the consignor, the duty of marking the lumber, keeping the orders separate in the hold, and delivering them safely to the several consignees. It does not appear that it requested the presence of plaintiff, took any instructions from him, or gave any to him, or that it in any wise controlled or supervised his movements.

The accident happened in this way: While plaintiff was going forward on the upper deck between the hatch coamings and the inshore rail, he was swept off by a moving sling load of timbers, and fell upon the dock, approximately 25 feet below, sustaining injuries to his legs. The load consisted of three 10x12 pieces, which the testimony shows were from 26 to 40 feet in length. It was slung near, but not at, the middle, so that it hung in a slightly tilted, but almost horizontal, position. Because of its length, it could not, in that position, be lowered directly into the hatch. According to the testimony of the winchman, who was called as a witness for the plaintiff, he sought to give it the requisite slant by tipping it upon the coaming of the hatch, a practice not uncommon. Another witness testified that it did not touch the deck or the hatch at all, but remained suspended. Whatever may be the fact in that respect, for some reason one end swung around and struck the winchman in such a way as for the moment to put him out of control of the winch, with the result that the load swung shoreward, striking plaintiff and carrying him off the deck.

As the basis for his charge of negligence, plaintiff contends that it is the common and the safer practice to sling the load far enough from the center so that it will hang more nearly perpendicular, and that it was the duty of the winch driver, when he found the load was being carried in a position nearly horizontal, to lower it, either on the dock or upon the deck, for a readjustment of the sling.

The plaintiff was 49 years of age, and had been a lumberman for 20 years, working for the last 5 years of that period in substantially the same capacity in which he was employed at the time of the accident. He had been on the vessel a day or two before, while a part of the cargo was being taken on at Portland, and he was on and about it on the day in question from 8 o'clock in the

morning until about 5 o'clock in the afternoon, when the accident happened. While the testimony is conflicting upon the question whether generally it is customary to carry a load in so nearly a horizontal position, it does not appear that this load was an exception to the practice followed during these two days.

Just before the plaintiff started across that part of the deck over which the sling loads were being carried, he observed that one of the jitney drivers was unloading on the dock a shipment a little forward of the proper hatch, and so close to another order that they were in danger of becoming mixed, and he desired to go forward to inspect the work and give appropriate directions. He was then standing a few feet forward of a ladder, by means of which he could have passed to the dock, or, if he preferred to remain on deck, he could have passed around on the offshore side of the No. 4 hatch into which the lumber was being lowered. He observed this particular load, saw that it consisted of long timbers, and that, in the horizontal position, it could not be lowered through the hatch. He testified that, though he knew the load was improperly slung, he watched it only until it had passed to the square of the hatch, and then he moved forward without giving it further attention. While he says it should have been lowered for readjustment of the sling, he took no care to see that that was done, and when he last observed it, it was still in the air. Swinging around while thus suspended, the timbers would sweep almost the full width of the passageway.

Without waiting for the assignment by defendant of other grounds, the lower court directed a verdict upon the theory that, in coming on the ship, plaintiff was not an invitee, but only a licensee. Perhaps no general rule can be laid down for distinguishing an implied invitation from a mere license. Plummer v. Dill, 156 Mass. 426, 31 N. E. 128, 32 Am. St. Rep. 463. "It is sometimes difficult," said Mr. Justice Harlan in Bennett v. Railroad Co., 102 U. S. 577, 584 (26 L. Ed. 235), "to determine whether the circumstances make a case of invitation, in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. * * * As each case must largely depend upon its special circumstances, we shall not attempt to lay down a general rule upon the subject."

Such custom or practice as the evidence here tends to show is not thought to be highly material. Defendant does not contend that plaintiff was a trespasser, and a mere license, as well as an invitation, may be implied from custom.

We are inclined to agree with the lower court that technically plaintiff was a licensee, rather than an invitee. But back of mere technical terms our real concern is with defendant's obligations. Clearly we think there was no duty on its part to adjust the mode of carrying on its work to suit the plaintiff's convenience, or, without regard to other considerations, to adopt a plan attended with the least danger to him at all places where he might choose to go. For reasons assigned by some of the witnesses, the method employed in handling the material appears to have been advantageous to its employees engaged in the hold in stowing the cargo; and, having knowledge, plaintiff was bound to adjust his movements to it. In going forward at the time upon an errand in which the defendant was in no wise interested, he assumed the risk of perils obviously incident to the movement of ponderous timbers swinging at the end of a long fall line.

Even though we were to take the view that permission to be on board the ship was for a purpose in which the defendant was indirectly interested, surely it was not with the understanding that, upon going into the zone of an operation necessarily attended with danger, he could fail to exercise reasonable care to protect himself against injury. Knowing, as he claims, that the load was improperly slung, and was still swinging in the air, he closed his eyes and chose to walk within 10 feet of it, when he could as conveniently have kept 20 feet away. The case of Leathers v. Blessing, 105 U. S. 626, 26 L. Ed. 1192, upon which he relied as being most nearly in point, is easily distinguished. It is not contended there was any defect in the ship, or in the machinery, or appliances, by which the loading was being carried on, or any concealed danger of any character.

The judgment is affirmed.