## THE YURI MARU.

## THE JUAN.

(District Court, E. D. Pennsylvania. January 31, 1927.)

### No. 45 of 1923.

1. **Negligence ⊜32(1)—Owner owes duty to licensee, not to negligently permit dangerous conditions.**

Owner of premises owes duty to licensee not to negligently permit conditions to exist by which he may be injured.

2. **Admiralty ⊜28—Negligent movement of ship, injuring libelant, held to give right of action in rem in admiralty.**

Negligent movement of a ship, by which libelant was injured, gave a right of action in rem in admiralty.

3. **Shipping ⊜81(1)—Movement of ship, without notice to licensee, who was upon her ladder, held negligent, and to render her liable for his injury.**

Respondent ship was tied to a pier while discharging, and another ship, which she had displaced, lay outside her. Respondent had a ladder extending to the pier, which was used by her crew and the crew of the other vessel in passing to and from the pier. Desiring to move, she notified the other vessel and libelant, one of her crew, started to pass to the pier to cast off her lines, and while on the ladder respondent cast off her lines, allowing her to move away from the pier, causing the ladder to fall, and libelant was injured. *Held* that, in the use of the ladder, libelant was a licensee, and that the movement of respondent without notice was negligent, and rendered her liable for his injury.

In Admiralty. Suit by Leonard Jakobsen against the steamship Yuri Maru, with the steamship Juan impleaded. On trial hearing, on pleadings and proofs. Decree for libelant against the Yuri Maru, and the Juan exonerated from liability.

H. H. Yocum, of Philadelphia, Pa., for libelant.

Lewis, Adler & Laws, of Philadelphia, Pa., for respondent.

H. M. Long, of Philadelphia, Pa., for intervening respondent.

DICKINSON, District Judge. The disposition of this cause has awaited the receipt of briefs. Inasmuch as there are two vessels who have a part in the controversy, we will refer to the Yuri Maru as the respondent vessel.

#### Pleadings.

The libel is based upon a theory of a cause of action which arises out of the following facts:

The libelant was third engineer, serving on board the Norwegian steamship Juan. It

will be noted that this is not the steamship respondent. The respondent is a Japanese steamship, which was engaged in transportation voyages on the high seas to and from the port of Philadelphia and other world ports.

On October 13, 1922, the steamship Juan, on which the libelant was serving,· arrived in the port of Philadelphia from Jamaica with a cargo of bananas, and here discharged her cargo. After its discharge she was made fast along the south side of municipal pier No. 1, at Camden, N. J. She was moored with her bow inshore, which presented her port side to the wharf or dock.

On January 20, 1923, the respondent steamship arrived at the same port from Lisbon, Portugal, with a cargo, and proceeded to the same pier to which the steamship Juan was tied. The respondent steamship went to the pier for the purpose of discharging her cargo. There was a custom or practice, enforced at the pier, that under such circumstances a vessel occupying the pier for the purposes for which the Juan was there should cast loose and permit the vessel whose cargo was to be discharged to go directly alongside of the pier. This practice was followed, and the respondent steamship went in to the dock and made fast thereto as closely as might be, making the usual and proper allowance for the rise and fall of the tide, in the length of the lines which held her at the pier which was on her port side. The steamship Juan, in accordance with the custom and practice referred to, was then returned as nearly to her former berth as was possible, and was moored in the usual and customary way, and with the knowledge and consent of the respondent ship, alongside of the latter but somewhat overlapping her.

After both vessels were in this position, the respondent provided the usual and customary wooden ladder, which was put out so that one end rested on the wharf or dock, and the ladder was lashed to the bulwarks of the respondent, and from thence extended inboards and was placed about midships of the respondent, and was the sole means of access to and egress from the vessel to the dock, and for the like use of the crew of the Juan. The only means of reaching the latter vessel from the wharf, or the wharf from the vessel, was by going across the deck of the respondent ship and making use of the ladder. The ladder was thus in common use of both vessels with the knowledge, acquiescence, and consent of the respondent. Later, on January 28, 1923, the respondent ship notified the Juan to shift the lines by which she was made fast, in order to permit the respondent to shift her position at the pier by dropping astern for the purpose of facilitating the coaling of the respondent. In order to accomplish this maneuver and to assist in it, the libelant attempted to go ashore to help to make fast or to cast loose the bow line of the Juan to the pier. To do this it was necessary for him to leave the Juan, cross the deck of the respondent, and reach the dock by means of the ladder above mentioned.

As the libelant was in the act of making this use of the ladder, and while he was upon it, the respondent, as the libelant charges, negligently and carelessly moved the respondent ship, shifting her position away from the wharf. A consequence was that the end of the ladder, being no longer supported on the wharf, dropped and swung suddenly and violently against the side of the respondent, whereby the libelant, who was then on the ladder, unwarned of the danger, and having no reason to expect or to anticipate the danger to which he was exposed, was crushed against the side of the vessel and hurled into the water. The result was that his leg was broken and he sustained other and very serious injuries. The negligence with which the respondent is charged is too obvious to require statement.

The original answer charges the libelant with contributory negligence, presents the defense of assumption of risk, interposes the liability of the libelant's vessel for the expense of his cure and his maintenance during cure, and charges further that the injuries to the libelant were due to the negligence of his own ship and its crew, who were fellow servants with him. There was likewise a petition under admiralty rule 56 to bring in the steamer Juan and its owners as parties respondent, in which the statement of the negligence of the Juan was amplified, coupled with the statement that the movement of the respondent vessel was due, not to any act of its managers, but to the action of the wind.

This intervening respondent filed an answer both to the libel and to the petition for intervention, in the main confirmative of the averments of the libel, but setting up that the injuries to the libelant were solely due to the negligence of the original respondent, and setting up by way of answer to the libel that under the laws of Norway, to which the libelant was subject, he had the right to receive from the Juan compensation for his injuries, which compensation they had paid in full, and the Juan was subject to no further liabilities.

### Discussion.

[1] The ultimate fact findings upon which a judgment of legal responsibility would be based appear from the above. fact recital. The only questions which can arise are in respect to the law of the case. It is to be observed that the respondent vessel occupied no relation of employer and employee to the libelant, so that the law arising out of such relation has no application. The relation of the libelant to the respondent is really that of a licensee, and the degree of care to be exercised by the respondent was that mete of care which the owner of anything owes to another who, with the knowledge and consent of the owner, uses it without paying compensation. Without referring to other elements of the obligation of duty which the owner under such circumstances owes, there is in it the element that the owner shall neither lay a trap, nor negligently permit one to exist, to which a licensee may become a victim.

The very general definition of negligence that it is the absence of due care under all the circumstances of the particular case is helpful as a guide in the instant case. Had the respondent known that the libelant was in use of the ladder at the time that it was in effect taken out from under him, a judgment of negligence could render itself. The real question, however, is this: The falling of the ladder as a consequent result of the shifting of the vessel should have been foreseen; was it not incumbent upon the respondent to have first removed the ladder, or placed some one in care of it, to give warning before the position of the vessel was shifted? Of course, a like obligation rested upon the libelant, who, knowing that the maneuver was to take place, was bound on his part to exercise due care under all of the circumstances, and to use reasonable precautions toward assuring himself of the safety of the use of the ladder. There is, however, nothing in the case which would justify his conviction of contributory negligence. Both vessels were tied to the wharf by lines. It was the inside vessel which was to be moved. The reasonable and expected method of doing this was for the outside vessel to cast loose, to get out of the way, to make room for the shifting of the inside vessel. It was this preparatory and preliminary movement in which the libelant was engaged at the time he was hurt.

[2] It is a fiction of the admiralty law that a vessel is a person, acting as such, with all the duties and obligations, and clothed with all the rights and powers, of a responsible human being. There are, however, acts and failures to act, in which the distinction may and must be made between what is the act of the ship and the act of its managers, which determines whether the libel in the instant case is in rem. The act here which caused the injury, in the sense of damage which libelant sustained, was an act of the ship, as his injury was due to the movement of the vessel. We think this visits the responsibility upon the vessel, and that the proceeding may be in rem. Being such, it is necessarily a cause maritime.

A feature of this cause is that the steamship Juan has been brought into it as a party under the designation of intervening defendants. This was upon petition of Yuri Maru, the purpose of which was to have determined under admiralty rule 56 the liability of the Juan; the prayer of the petition being that the Juan be brought in as a party respondent, in like manner as if the original libel had been filed against both vessels, and with the further thought of having determined the responsibility of both ships in respect to each other. Treating these proceedings as a libel against the Juan, there is charged against her negligence and likewise her obligation for the care and maintenance of the libelant, who was a member of her crew.

The answer of the Juan denies negligence on its part, and attributes the injuries of the libelant wholly to the negligence of the Yuri Maru, admitting, however, that under the law of Norway the liability of the Juan to provide what is the substantial equivalent of care and maintenance, which obligation the intervening respondent avers to have been met and discharged.

[3] The only question raised by the respondent, and in consequence the one to which we have confined the discussion, is that of whether the respondent was guilty of any negligence which contributed to the injuries of the libelant. Distinctions more or less difficult to define are sometimes drawn between what is termed a licensee and invitees. The learned proctors for the respondent characterized the libelant as a licensee, and assert that the respondent is answerable for only such negligence as may be characterized as wanton or gross. The point made is that the question of liability of the respondent is to be determined by the degree of care which was owing by the respondent to the libelant. Under the fact situation here presented, we think the distinction to be unimportant.

The rule applicable to this case is that laid down in The Montrose (D. C.) 179 F.

1000. The distinction between trespassers and others is clear enough, but the libelant was just as clearly not a trespasser, and we entertain no doubt that the respondent, which had permitted the libelant to use this ladder, was responsible for its negligent removal while he was using it. Had the proximate cause of the injury been the condition of the ladder, a wholly different question would have been presented. We do not follow the argument that the casting loose of the lines which tied the Yuri Maru to the pier was not the cause of the mishap to the libelant. It is, of course, true that, if the vessel had not moved away from the wharf, the ladder would not have fallen. It is likewise true that the casting loose of the lines did not move the vessel, but it did permit her to be moved, and, if the lines had not been cast loose, this mishap would not have occurred. We think the distinction attempted to be a little fanciful.

We have already discussed and disposed of, by a fact finding, the charge of contributory negligence.

### Damages.

The proctors for the respondent have not discussed the question of the assessment of damages. We suppose this was because they have assumed that the court would dispose of the question of negligence first, and damages as an independent inquiry. We have not discussed the question of the effect of any disbursements made by the intervening respondent on the libelant's account, because no point is made of this and the discussion is not invited. We further suppose that this, also, is because counsel have regarded the question as bearing upon the sum to be awarded, and not to the question of responsibility.

### Findings.

(1) The respondent Yuri Maru is found to have been guilty of negligence, which was the proximate cause of the physical injuries sustained by the libelant.

(2) The libelant is found not to have been guilty of contributory negligence.

(3) The intervening respondent, the Juan, is found not to have been guilty of any negligence which was the cause of or contributed to the injuries sustained.

(4) The libelant has the right to have the sum of the damages sustained by him determined, and to an award therefor against the respondent Yuri Maru, with costs.

An appropriate decree, embodying and enforcing these findings, may be submitted.