## SILVERADO S. S. CO. v. PRENDERGAST.

Circuit Court of Appeals, Ninth Circuit.
March 11, 1929.

Rehearing Denied April 15, 1929.

No. 5617.

See, also, The Silverado (D. C.) 14 F.
(2d) 243.

Frank A. Huffer, William H. Hayden,
Fred T. Merritt, Lane Summers, and G. H.
Bucey, all of Seattle, Wash., for appellant.
Wm. Martin and J. O. Davies, both of
Seattle, Wash., for appellee.

Before GILBERT, RUDKIN, and DIE-
TRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an
appeal from a judgment awarding damages
to appellee for personal injuries suffered by
him as the result of his falling into an open
hatch on the appellant's steamship Silverado
while she was lying at the port of Seattle.
The vessel was operated solely as a carrier of
cargo and was adapted to no other purpose.
The appellee was a resident of Seattle, where
he was engaged in the transfer business, and
on the evening of January 1, 1925, at the in-
vitation of a man by the name of Ericson,
Hengst, the Silverado's master, attended a
party given at appellee's home by some of
his friends. Upon the close of the party,
about 3 or 4 o'clock in the morning, at the
suggestion of Hengst, appellee, his wife, and
a few others went with him to the Silverado
with the intention of accompanying him as
his guests on a trip to Everett that day. The
vessel was then lying alongside the dock with
her main deck about a foot above the floor of
the dock, and the party went on board at a
point abreast of hatch No. 3, which was open
but was protected by a coaming about 30
inches high. Lying on the deck along and
close to the shoreward coaming was a mas-
sive timber about 30 inches square, the upper
surface thereof being nearly on a level with
the crest of the coaming. For those who de-
sired to use it, there was a ladder extending
from the dock to the top of this timber.
Stepping directly from the dock to the deck,
appellee gave assistance to his wife as she
walked along this ladder. Just how he got
up on the large timber is not clear, but ap-
parently when he turned or should have
turned to the right, he stepped or stumbled
from it into the open hatch and fell to the
deck below.

At the close of all of the evidence, appel-
lant moved for a directed verdict in its fa-
vor, and the denial of this motion is the sub-
ject of its principal assignment of error.

The evidence is measurably conflicting, or
at least is open to opposing inferences, touch-
ing the manner in which appellee and his
friends went on board, the directions
Hengst gave them, the exact position of the
ladder, the condition of the deck, and the
question of light. In short, had the issue
been one only of the failure of Hengst to ex-
ercise an ordinary degree of care, the case
may be conceded to have been one for the
jury. Under plaintiff's theory of his right
to recover, admittedly such a standard
would not be sufficient, and it is doubted
whether in any view of the evidence it would
warrant a finding that Hengst's conduct was
so grossly lacking in care for appellee's safe-
ty that it could be characterized as willful or
wanton. If the deck was well lighted there
would be no room for a charge of negligence
in any degree, and if it was in total darkness
it would seem to have been the height of
recklessness for one of appellee's years and
experience to take any step upon it without
the most minute directions or cautiously
"feeling" his way.

■■ But· if we assume gross negligence on the part of Hengst, we are still constrained to the view that the denial of defendant's motion was error. Generally a principal is liable for his agent's torts only if they are committed while the agent is carrying on his principal's business. If the agent steps aside from that business to promote purposes of his own having no connection with his employer's business, the relation of agency is for the time being and to that extent suspended. And usually it is not within the implied authority of an agent to invite his personal friends to visit, enter upon, or make use of his principal's property; nor is a principal ordinarily liable for injuries suffered by third persons through the negligence of a servant who for purposes of his own has without authority invited or permitted them to come upon the principal's premises. Touching the reason underlying and the extent of the rule under which the master is made responsible for the negligence of his servant, the Supreme Court has said: "But whether the reasons of the rule be grounded in considerations of policy or rested upon historical tradition, there is a clear limitation to its extent. Guy v. Donald, 203 U. S. 399, 406 [27 S. Ct. 63, 51 L. Ed. 245]. The master's responsibility cannot be extended beyond the limits of the master's work. If the servant is doing his own work or that of some other, the master is not answerable for his negligence in the performance of it." Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 29 S. Ct. 252, 254 (53 L. Ed. 480). And in 2 Corp. Jur. p. 853, may be found this statement of the rule: "In order to render the principal liable for his agent's torts, they must have been committed while carrying out the principal's business. * * * But if the agent steps aside from the principal's business for however short a time to do acts not connected with such business the relation of agency is for that time suspended and the agent is not acting within the course of his employment." See, also, 39 Corp. Jur. §§ 1469, 1490; 36 Cyc. p. 163; Meachem on Agency (2d Ed.) vol. 2, §§. 1874, 1913; Cooley on Torts (3d Ed.) vol. 2, p. 1030; Thompson on Negligence (2d Ed.) vol. 1, § 525; Michie on Carriers, vol. 2, pp. 1534, 1548; Elliott on Railroads (3d Ed.) vol. 1, § 525.

■ Upon the record there is no room for a contention that Hengst's purpose in inviting appellee and his friends to come on the vessel had any relation, proximate or remote, to appellant's business. As appellee himself testified, the invitation was, "to go down and see the boat and take a trip on the boat, just for sociability." As already suggested, the vessel was designed for the carrying of freight and was never used for any other purpose. Hengst had no authority, express or implied, to invite or to receive on board third persons for social purposes. Neither did appellee·have any reason to believe that, in taking the party on board at the time and under the conditions shown, Hengst was acting for his employer or within the scope or apparent scope of his agency. Appellee's argument to the effect that even though he may have been technically a trespasser, the appellant, being aware of his presence, was bound to exercise a measure of care to protect him against peril, particularly against a hidden peril, is based upon the assumption that the knowledge of Hengst is to be imputed to the employer. But in conducting appellee on board and giving him directions Hengst was acting, not for the appellant, but for appellee.· Hengst having for the time being abdicated his agency, the appellant was without representation, and hence had no knowledge of the appellee's. presence. It probably would not be contended that had appellee suffered injury through Hengst's negligence while the party was being conveyed to the pier, appellant would be liable, but Hengst was quite as much engaged in appellant's business and acting as its agent on the way down to the vessel as he was after reaching it up to the time the accident occurred. He had stepped aside from appellant's service, and in nothing he did from the time he left his ship for the party, up to the time of the accident, was he carrying on his principal's business or acting within either the real or apparent scope of his agency.

Out of the large number of cases where the principle has been applied to facts measurably analogous, the following may be noted: Caniff v. Blanchard Nav. Co., 66 Mich. 638, 33 N. W. 744, 11 Am. St. Rep. 541; Chicago, etc., Ry. Co. v. Bryant (C. C. A.) 65 F. 969; St. Louis Southwestern Ry. Co. v. Harvey (C. C. A.) 144 F. 806; Central Stamping Co. v. McKeon (C. C. A.) 255 F. 8; Sweeden v. Atkinson, 93 Ark. 397, 125 S. W. 439, 27 L. R. A. (N. S.) 124; Duree v. Wabash R. Co. (C. C. A.) 241 F. 454.

In nearly all, if not all, of the cases appellee cites that have any bearing upon the question, the negligent act or omission was clearly that of the agent or servant in carrying on his principal's business. Typical are Great Northern Ry. Co. v. Harman (C. C. A.) 217 F. 959, L. R. A. 1915C, 843, and Lafferty v. Armour, 272 Pa. 588, 116 A. 515. In the former a locomotive engineer, after

discovery, failed to use due care to avoid collision with a hand car wrongfully on the track, and in the latter the driver of a wagon after consenting, without authority from his employer, to plaintiff's getting on the wagon, negligently exposed him to peril by compelling him to get off while the wagon was in motion. Such a case we might have here if, after coming on·the vessel and again entering on the duties of his employment and exercising his authority thereunder, Hengst had compelled appellee to get off by jumping overboard.

Judgment reversed.