Joseph KERMAREC, Plaintiff-Appellant,

v.

COMPAGNIE GENERALE TRANSAT-LANTIQUE, Defendant-Appellee.

No. 90, Docket 24203.

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1957.

Decided May 21, 1957.

Louis M. Volan, New York City, (Malcolm B. Rosow and William L. Standard, New York City, of counsel, on the brief), for plaintiff-appellant.

George A. Garvey, New York City, for defendant-appellee.

Before CLARK, Chief Judge, and LUMBARD, and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This action was brought to recover damages for personal injuries sustained by the plaintiff, Joseph Kermarec, a citizen of New York, aboard defendant's vessel, the S. S. Oregon, while berthed in the North River at New York.

Evidence was adduced at trial from which a jury could find that on November 28, 1948, about noon, Kermarec went aboard the S.S. Oregon with Henry Yves,

a member of the crew. Yves had secured the issuance of a pass by the defendant to Kermarec.[1] Concededly the visit was a purely personal and social call and the two men went to Yves' room and partook of some refreshments. About four or five o'clock in the afternoon the two men decided to leave the ship. As they started down a stairway, Yves was called by another member of the crew. He turned back and Kermarec proceeded down the stairs by himself.

The stairway consisted of twelve steps, covered by a white canvas runner $\frac{1}{8}$ inch thick. The canvas was clean and Kermarec testified that, as he started down, the stairs "looked all right all the way down." Holding the handrail, he continued his descent until he reached the fourth or fifth step from the bottom. The canvas then slipped from under his foot and he fell to the bottom of the stairway fracturing his right hip. While lying at the bottom of the stairway, Kermarec testified, he saw the canvas hanging loose off the edge of the step. Yves and Rene Dufy, the ship's bartender, came down the stairway immediately after Kermarec but they did not fall.

The canvas had been fastened to a rubber tread on the stair by the ship's porter, Bourdon. Two small tacks, similar to carpet tacks, had been hammered through the canvas and into the rubber on each step; one on each side of the canvas. Bourdon further testified that the tacks were placed in the same position day after day and that they could be removed easily by "taking hold" of the canvas.

There was other and conflicting evidence but we have stated the facts in the light most favorable to the plaintiff to test the propriety of the dismissal by the district court. Eckenrode v. Pennsylvania R. Co., 1948, 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed. 41.

This action was brought on the civil side of the district court, the complaint alleging diversity of citizenship and that Kermarec's injuries resulted from the vessel's unseaworthiness and from the defendant's negligence. The trial court dismissed the issue of unseaworthiness and submitted only the negligence count to the jury, charging them that the plaintiff was a mere licensee and that the defendant would be liable "only if both of the following conditions are present:

"1. If the defendant knows of the unsafe condition and realizes that it involves an unreasonable risk to the plaintiff and has reason to believe that the plaintiff will not discover the condition or realize the risk; and

"2. If the defendant invites or permits the plaintiff to enter or remain upon the ship without exercising reasonable care either to make the condition reasonably safe or to warn the plaintiff of the condition and risk involved therein."

The jury returned a verdict for the plaintiff for $7,500. The defendant thereupon moved to set aside the verdict and dismiss the complaint. Judge Murphy granted the motion on the ground that there was no evidence that the defendant had knowledge of the dangerous condition; or that such knowledge could be imputed to the defendant because its servants had used tacks inadequate for the purpose. It is from this order that the plaintiff appeals and also from dismissal of the unseaworthiness count. We agree with both rulings of the district court.

The plaintiff does not stand in such a relationship to the ship that he could maintain an action on the theory of unseaworthiness; Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; nor did he show facts

---

1. The pass contained the following disclaimer of liability: "The person accepting this pass, in consideration thereof, assumes all risks of accidents and expressly agrees that the Compagnie Generale Transatlantique shall not be held liable under any circumstances whether by negligence of their employees or otherwise, for any injury to his person, or for any loss or injury to his property."

entitling him to a recovery on the theory of negligence. Gunnarson v. Robert Jacob, Inc., 2 Cir., 1938, 94 F.2d 170, certiorari denied, 1938, 303 U.S. 660, 58 S.Ct. 764, 82 L.Ed. 1119; rehearing denied 304 U.S. 588, 58 S.Ct. 948, 82 L.Ed. 1548.

■ It seems abundantly clear that Kermarec was a mere licensee. He came upon the ship for his own pleasure and convenience and while the defendant consented to his coming, it did not invite him aboard for any "business" purpose.

Although the concept of analogizing the guest of a seaman on ship to the guest of a tenant on a leasehold, advanced in the dissenting opinion, would be an interesting argument if this were a novel question, it has long been held that the guest of a seaman is nothing more than a licensee. Thus in Metcalfe v. Cunard S. S. Co., 1888, 147 Mass. 66, 16 N.E. 701 the plaintiff, going aboard defendant's ship to consult with the ship's doctor, was held to be a licensee; and in Freeman v. United Fruit Co., 1916, 223 Mass. 300, 111 N.E. 789 a tailor, admitted aboard ship to fit a seaman's uniform, was held to be a licensee; in Kosba v. Bank Line, D.C.Md.1931, 46 F.2d 119 plaintiff came aboard ship to install a piano, the personal property of the captain, in order to provide entertainment for the ship's officers, and was denied recovery since he was a mere licensee; in Silverado S. S. Co. v. Prendergast, 9 Cir., 1929, 31 F.2d 225, the plaintiff was invited aboard the defendant's cargo ship as the social guest of the master, and was held to be a licensee. See also Apostolou v. Eugenia Chandris, D.C.Or.1938 A.M.C. 995, social guest of a steward, held licensee. As to an employee's visitor on business premises, cf. Ridley v. National Casket Co., Sup., 1916, 161 N.Y.S. 444, affirmed 4 Dept. 1917, 178 App.Div. 954, 165 N.Y.S. 1109, the cases cited in Meiers v. Fred Koch Brewery, 1920, 229 N.Y. 10, 127 N.E. 491, 13 A.L.R. 633 and Rosehill Cemetery Co. v. City of Chicago, 352 Ill. 11, 185 N.E. 170, 87 A.L.R. 757.

Shipowners are not landlords to their seamen; it is not their business to furnish for their seamen living quarters or any visiting rooms where they may entertain guests at any time. Quite the contrary, there are many reasons why in order properly to control what happens on board, shipowners customarily forbid access to visitors except to certain parts of the ship at certain hours. For this purpose the shipowner issues passes as was done here. To analogize the shipowner to a landlord would disregard many pertinent and obvious facts of the seaman's status as one who while on board lives where he works.

The seaman has no right to have anyone visit him whenever he chooses; he may not even stay aboard himself except as he is a member of the crew and then only so long as his employment may continue. While the shipowner may permit friends to visit the seaman's ship at certain times when he is not at work, as here upon the issuance of a pass, both visitor and seaman know full well that this is a privilege revocable at the shipowner's pleasure. Indeed the regular routine of maintaining a ship, such as this, even while in port, requires the division of seamen and much of the ship's personnel into three watches, and at all times of the day or night some members of the crew are sleeping. Hence there are many reasons why free access is not granted to visitors. Thus the shipowner's relationship to his seamen is very different from that of a landlord to his tenant.

The high duty of care which the maritime law has required of shipowners with respect to seamen arises from necessities of the calling which provoke a solicitude for the seaman's welfare. But the seaman's visitor who attends at his own choice, for a purpose which is of no benefit to the ship, is on sufferance.

A cause of action for unseaworthiness, while available to seamen and stevedores, is not available to Kermarec who was nothing more than a licensee. The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760; Seas Shipping Co. v.

Sieracki, 1945, 326 U.S. 700, 66 S.Ct. 58, 90 L.Ed. 413; Pope & Talbot v. Hawn, supra. Kermarec did not make any contribution to the ship's safety, preservation or progress; he did not submit his life and safety to the ship as a seaman does; he did not load her for voyage as a stevedore does; consequently he does not have any right to recover for unseaworthiness.

Nor does Pope & Talbot v. Hawn, supra, pressed on us by appellant, require a different result. In Pope & Talbot, the plaintiff, Hawn, was employed by an independent contractor to make repairs on the petitioner's vessel which was docked in the Delaware River within the territorial waters of Pennsylvania. He slipped and fell through an uncovered hatch hole on the vessel and sustained injuries for which he sought recovery. Hawn's suit was brought on the law side of the district court and his complaint alleged that his injuries were the result of unseaworthiness and negligence on the part of Pope & Talbot. Notwithstanding a finding of contributory negligence, a recovery was allowed on the basis of the admiralty rule of comparative negligence. In affirming that decision, the Supreme Court rejected the contention that the Pennsylvania rule of contributory negligence should apply, holding that Hawn's action was governed by the federal maritime law. The court stressed the fact that Hawn was injured in navigable waters "while working on a ship to enable it to complete its loading for safer transportation of its cargo * * *" 346 U.S. 406, 409, 74 S.Ct. 202, 205, 98 L.Ed. 143.

Though the concept of who is a seaman has been broadened in recent court decisions, we cannot say that this guest of a member of the crew, who came aboard for a social visit, even with the owner's acquiescence, should be classed as a seaman and entitled to sue for unseaworthiness.

■ Nor has Kermarec shown the requisite breach of duty on the part of the defendant to entitle him to recover on the theory of negligence. Gunnarson v. Robert Jacob, Inc., supra. In Gunnarson, a proceeding to limit a shipowner's liability, a claim was filed by the son of the ship's captain to recover for injuries incurred through the alleged negligence of the shipowner. The claimant went aboard the vessel to visit with his father and, though he helped him work a tank of gas into a storage space, the main purpose of the visit was purely social. It was found that the ship's captain had been negligent in installing the gas tank and that this negligence caused it to explode, thus injuring the claimant. Gunnarson, the claimant, was found to have been a mere licensee because of the social nature of his visit, and the claim was dismissed.

■ The general rule is that the shipowner shall not wilfully or wantonly injure a licensee, or expose him to hidden perils or fail to use due care to prevent injury to him after discovering that he is in danger. Kosba v. Bank Line, supra; Silverado S. S. Co. v. Prendergast, supra; Lauchert v. American S. S. Co., D.C.W.D.N.Y.1946, 65 F. Supp. 703; The Sudbury, D.C.Or.1926, 14 F.2d 533. Rodermond v. United States, 3 Cir., 1950, 179 F.2d 955.

In the instant case Kermarec argued that the defendant had breached its duty in failing to notify him that a dangerous condition existed on the stairs. There was no evidence to show that the defendant knew that the stairs were in a dangerous condition. On the contrary, there was testimony of crew members that the stairs had been used without mishap throughout the day both before and after the accident and that they had noticed nothing unusual.

The plaintiff, however, maintains that the necessary knowledge could be imputed to the defendant because the tacks used by its servants were clearly inadequate for that purpose. There was no evidence that the tacks were inadequate. The plaintiff's argument derives solely from a scale drawing of a tack which drawing was in evidence. Standing alone, and in the light of all the surrounding circumstances, this was not

enough to permit the jury to draw the inference that the defendant should have known that the condition of the stairway presented a condition of danger to Kermarec of which he should have been warned.

Our decision does not require us to pass on the validity of the disclaimer of liability clause contained in the pass issued by the defendant, and we refrain from so doing.

The judgment is affirmed.

CLARK, Chief Judge (dissenting).

However the defendant's duty is defined here, liability would seem clear or at least so apparent as to justify the moderate award the jury gave. Putting a loose canvas on a steep flight of stairs is an invitation to injury; that the practice had been followed for some time without casualty can be only sheer luck. Two small tacks, removable by hand alone, were placed at the front of each tread on either side. That was all; nothing held the material going back to the rear of the tread or up the riser to the tread above. Each day the ship was in port the ship's porter, Bourdon, in the scope of his employment removed the canvas by just picking it up, "and the tacks come out by themselves"; then after washing the steps, he retacked the canvas in the same position. The opportunities for loose or bulging canvas to trip users of the stairs are so obvious to anyone who has ever mounted a stairway that not surprisingly the jury found Bourdon had actual knowledge of the danger, but was too lazy to remedy it by securing the material properly.

Neither under the erroneous charge which the trial court gave the jury nor under the more favorable instructions to which the plaintiff was entitled was it necessary to show that the defendant company (*i. e.*, its top officers) had actual knowledge of the danger: (1) If liability rests on Bourdon's affirmative negligence in improperly tacking the carpet, his employer is vicariously liable without fault of its own on principles of *respondeat superior*; (2) if the fault is the company's failure to repair or warn of a hidden dangerous condition, actual knowledge of the employee who created it may be imputed to the employer because the knowledge concerns a matter as to which the employee acts within the scope of his employment, *e. g.*, 1 Restatement, Agency § 272, comment *a*2 (1933); In re Texas City Disaster Litigation, 5 Cir., 197 F.2d 771, affirmed 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427; Cashin v. Northern Pac. Ry. Co., 96 Mont. 92, 108, 28 P.2d 862, 868; (3) if, contrary to the charge, the plaintiff was an invitee the company owed him a duty to inspect for hidden dangers, and actual knowledge of the danger need not be shown; and (4) if, contrary to the charge, the plaintiff was entitled to a seaworthy staircase the shipowner was liable without fault, though it lacked knowledge of the unseaworthy condition, Alaska S. S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

In view of these facts it may seem academic to spend much time discussing the particular legal theory on which recovery should be based. But for future cases the point may be important or decisive, and I therefore turn to it. After discussing the applicable law, I shall try to establish that (1) the plaintiff was an invitee; (2) even as a licensee the plaintiff can recover on these facts; (3) the owner's duty to keep the vessel seaworthy extends to social guests of resident seamen visiting them aboard ship.

1. *Federal maritime law applies.* Pope & Talbot, Inc., v. Hawn, 346 U.S. 406, 409, 74 S.Ct. 202, 205, 98 L.Ed. 143, holds that a federal court whose jurisdiction stems from the diverse citizenship of the parties must apply federal maritime law where (a) the tort occurred in navigable waters; (b) the complaint sounds in negligence and unseaworthiness—rights of recovery "rooted in federal maritime law"; and (c) the tort is "maritime" in the sense of Atlantic Transport Co. of West Virginia v. Imbrovek, 234 U.S. 52, 61–63, 34 S.Ct. 733, 58 L.Ed. 1208, 51 L.R.A.,N.S., 1157. The Imbrovek case involved the jurisdiction

of admiralty courts over torts in navigable waters which are part of a state, from which it follows that those torts are "maritime" in the meaning of Pope & Talbot, Inc., v. Hawn, supra, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, which can be remedied in a federal court of admiralty. In the Imbrovek case, supra, 234 U.S. 52, 61–63, 34 S.Ct. 733, 58 L. Ed. 1208, the Supreme Court declined to decide whether location in navigable waters was alone sufficient to make a tort "maritime" or whether further nautical flavor was required. But under either test this plaintiff's claim qualified: It occurred aboard an ocean-going vessel; plaintiff's reason for being aboard was to visit a resident seaman; the accident was partially due to the steep stairway peculiar to ships. I conclude that the district court erred in applying state rather than the general maritime law to the case.[1]

2. *The plaintiff was an invitee.* Any discussion of the categories of invitee, licensee, and trespasser would be quite inadequate without the observation that these distinctions have been more and more obscured during the last century as courts have moved toward imposing on owners and occupiers a single duty of reasonable care in all the circumstances. See the authorities collected in 2 Harper & James, The Law of Torts § 27.1 (1956). The concept of *invitee* has been broadening as courts have oscillated between viewing "invitation" or "economic benefit" as the essence of the category. See 2 Harper & James, The Law of Torts § 27.12 (1956). Under either approach the guest of a resident seaman should qualify as an invitee in the eyes of contemporary federal maritime law.[2]

If invitation is the touchstone, it must be shown that persons authorized by the defendant led the plaintiff to believe that the owner intended the premises to be used by visitors for this purpose and adapted the premises for that use.  2

Harper & James, The Law of Torts § 27.12 (1956). This requirement was met by evidence that plaintiff knew his presence aboard was authorized by an official visitor's pass obtained by his seaman host; that plaintiff was not shown the limitations written on that pass; and that plaintiff saw the canvas placed on the stairways to keep them neat and clean for visitors while the ship was in port.

These facts distinguish the cases cited by my brothers where the finders of fact decided that the invitation was extended by a crew member without the shipowner's authority and no conduct of the shipowner suggested apparent authority of the crew member to extend such consent, *e. g.,* Metcalfe v. Cunard S. S. Co., 147 Mass. 66, 16 N.E. 701 (plaintiff slipped through an unattended gate not officially open to visitors on that day and went up the freight gangplank under the erroneous impression that his friend was aboard the vessel); Kosba v. Bank Line, D.C.Md., 46 F.2d 119 (the pass informed the plaintiff that he was permitted aboard for the private business of the captain, and not in the interest of the ship); Silverado S. S. Co. v. Prendergast, 9 Cir., 31 F.2d 225, certiorari denied Prendergast v. Silverado S. S. Co., 280 U.S. 557, 50 S.Ct. 17, 74 L.Ed. 612 (the ship's master, without authority, took a drunken friend aboard in the middle of the night); Apostolou v. S. S. Eugenia Chandris, D.C.Or.1938 A.M.C. 995, appeal dismissed 9 Cir., 103 F.2d 1006 (plaintiff was invited aboard by a steward who had no authority, actual or apparent, to issue the invitation); Gunnarson v. Robert Jacob, Inc., 2 Cir., 94 F.2d 170, certiorari denied Robert Jacob, Inc., v. Gunnarson, 303 U.S. 660, 58 S.Ct. 764, 82 L.Ed. 1119 (the master invited his son aboard without the real or apparent authority of the shipowner).

That the present plaintiff had an implied invitation is supported by cases

---

1. Even under New York law I think liability follows under the cases I cite at the end of this opinion.

2. Freeman v. United Fruit Co., 223 Mass. 300, 111 N.E. 789, applying the nonmaritime Massachusetts law of 30 years ago, held to the contrary.

labeling as "invitees" persons who came aboard without conferring the slightest economic benefit upon the shipowner and without express invitation, e. g., Radoslovich v. Navigazione Libera Triestina, S. A., 2 Cir., 72 F.2d 367 (a bargee crossing the shipowner's vessel to get to the pier to enjoy his leisure is an invitee); Griffiths v. Seaboard Midland Petroleum Corp., D.C.Md.1933 A.M.C. 911 (plaintiff, crossing the shipowner's vessel to get to the pier, is an invitee). Cf. The Francesca, D.C.W.D.N.Y., 19 F.Supp. 829, 1937 A.M.C. 1006 (a high duty of care is owed to a gratuitous passenger); Calanchini v. Bliss (The Cayuga), 9 Cir., 88 F.2d 82, 1937 A.M.C. 203 (same); McLoughlin v. Mulqueen, D.C.E.D.N.Y.1929 A.M.C. 1626 (an infant child of a crew member's social guest may be an invitee).

Frequently admiralty courts have used the economic benefit approach, substituting the label "business visitor" for "invitee." Plaintiff qualified as a "business visitor," since the shipowner benefits by having his employees enjoy necessary recreation, as recognized in the cases allowing seamen to recover maintenance and cure for injuries suffered in the course of shore-side recreation, e. g., Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (the seaman fell out of the window of a room adjoining a dance hall after drinking wine); Aguilar v. Standard Oil Co. of N. J., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (the seaman was injured while ashore on personal business); Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 (the seaman fell in a dry dock while returning to his ship after overstaying his leave); Nowery v. Smith, D.C.E.D.Pa., 69 F.Supp. 755, affirmed 3 Cir., 161 F.2d 732 (the seaman was injured in a barroom fist fight).

In view of the shipowner's liability to the seaman for injuries suffered in shoreside recreation, it is in the owner's economic interest to encourage recreation aboard ship, rather than ashore, thus making the seaman's activities subject to control and the men available on ship whenever needed. That benefit to the shipowner may be thus indirect should be no more fatal to plaintiff's preferred status here than in the cases where we have labeled a person on board a transatlantic liner to see a passenger off a "business visitor" of the shipowner. McCann v. Anchor Line, 2 Cir., 79 F.2d 338; accord, Voirin v. Compagnie General Transatlantique (The Champlain), 151 Misc. 498, 270 N.Y.S. 643, 1934 A.M.C. 25.

Pertinent, too, is the role which the landlord and tenant relationship plays in mitigating the concept of "licensee" in cases ashore. Persons who are not "invitees" vis-a-vis the owner of a building are owed the same high duty of care when injured in the common hallways or approaches over which the owner retains control because they are social guests of the owner's tenants, e. g., Pessagno v. Euclid Inv. Co., 72 App.D.C. 141, 112 F.2d 577; Klotz v. Ganz, 296 N.Y. 715, 70 N.E.2d 538; Bowers v. City Bank Farmers Trust Co., 282 N.Y. 442, 26 N.E.2d 970. True, courts sometimes fail to make clear whether such persons are regarded as invitees or persons in the shoes of the tenant, since in either event they are owed the duty of reasonable care to make the area reasonably safe, e. g., 2 Restatement, Torts §§ 360, 332, comment h (1934); 2 Harper & James, The Law of Torts § 27.17 (1956); Boyce v. 228th and Carpenter Ave. Holding Co., 295 N.Y. 575, 64 N.E.2d 282. But the result is the same.

Placing this higher duty on the owner to these persons is quite fair because the individuals injured expect the passageways to be made safe for them; the owner anticipates their presence there; and the owner is the only person in a position to discover the danger and avoid the accident by reasonable precautions. Aboard vessels, of course, the resident seaman is not technically a tenant; but his social guest is entitled to the higher duty of care owed a tenant's guest for the reasons stated. Perhaps the closest shoreside analogy to plaintiff is a resident janitor's social guest, held to be an invitee. Mercier v. Bushwick Sav. Bank,

261 App.Div. 151, 24 N.Y.S.2d 666, affirmed 261 App.Div. 1105, 27 N.Y.S.2d 1003. How strange it is after Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; Alaska S. S. Co. v. Petterson, supra, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798; and Pope & Talbot, Inc., v. Hawn, supra, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, that a federal court is unwilling to read federal maritime law as imposing a duty on the shipowner as broad as a landowner's duty ashore!

My brothers balk at such a conclusion, pointing to the restrictions which a shipowner places on the visiting hours of seamen's guests; but similar limitations surround a transatlantic passenger's visitor, who is an invitee, e. g., Voirin v. Compagnie General Transatlantique (The Champlain), supra, 151 Misc. 498, 270 N.Y.S. 643, 1934 A.M.C. 25 (the court ignored the restrictions written into the visitor's pass); McCann v. Anchor Line, supra, 2 Cir., 79 F.2d 338. Of course the shipowner may restrict the hours of the invitation, but there is no showing here that such limitations were violated or that they were brought to the attention of the plaintiff.

3. *The defendant breached the duty owed a licensee.* But the plaintiff's recovery can be justified even if he is saddled with the dolorous sobriquet of "licensee." As indicated previously, Bourdon could be found to have had actual knowledge of the danger; and this knowledge may be imputed to the defendant employer. Whether the negligence be viewed as an "activity" (Bourdon's daily retacking of the canvas) or a "condition of the premises" (the dangerous stairway), the defendant owed the plaintiff a higher duty of care than the majority opinion suggests.

a. *The defendant's negligent activity.* "There are a good many dicta—mostly in older cases—and some holdings to the effect that the occupier of land owes the bare licensee no greater duty than to refrain from intentional, or willful or wanton, misconduct towards him. 'The prevailing view is to the contrary, however, and it is now generally held that in cases involving injury resulting from *active conduct,* as distinguished from conditions of the premises, the landowner or possessor may be liable for failure to exercise ordinary care towards a licensee whose presence on the land is known or should reasonably be known to the owner or possessor.' * * * At any rate, there is well-nigh universal agreement that the duty of care is owed to licensees whose presence is to be expected." 2 Harper & James, The Law of Torts § 27.10 (1956), quoting Oettinger v. Stewart, 24 Cal.2d 133, 138, 148 P.2d 19, 22, 156 A. L.R. 1221, and collecting state law authorities. In admiralty the law is the same, e. g., The Yuri Maru-Juan, D.C. E.D.Pa., 17 F.2d 318, 1927 A.M.C. 571; Calanchini v. Bliss (The Cayuga), supra, 9 Cir., 88 F.2d 82, 1937 A.M.C. 203; The Francesca, supra, D.C.W.D.N.Y., 1937 A.M.C. 1006; Voirin v. Compagnie General Transatlantique (The Champlain), supra, 151 Misc. 498, 270 N.Y.S. 643, 1934 A.M.C. 25 (dictum).

b. *The condition of the premises.* An owner need not inspect his premises to discover dangerous conditions that might imperil licensees, but if "he learns of such a condition and should realize that it is unreasonably dangerous to a licensee, and if the occupier 'cannot reasonably assume that the licensee knows [of the condition], or by a reasonable use of his faculties would observe' it, then the occupier is under the duty to use due care to avoid the injury, either by removing the danger or by giving reasonable warning of its presence." 2 Harper & James, The Law of Torts § 27.9 (1956). Here, too, admiralty law is in accord, e. g., The Blue Moon III, D.C. W.D.N.Y., 60 F.2d 653 (the owner of a vessel is liable to a social guest because the owner's employee failed to warn the guest of a slippery deck created by the employee).

4. *Recovery for unseaworthiness.* The shipowner's duty to keep the vessel seaworthy extends to persons other than seamen and stevedores. In Pope & Talbot, Inc., v. Hawn, supra, 346 U.S. 406,

412, 413, 74 S.Ct. 202, 207, 98 L.Ed. 143, the Supreme Court was asked to limit its historic decision in Seas Shipping Co. v. Sieracki, supra, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, to "stevedores," but it refused with these words: "These slight differences in fact cannot fairly justify the distinction urged as between the two cases. Sieracki's legal protection was not based on the name 'stevedore' but on the type of work he did and its relationship to the ship and to the historic doctrine of seaworthiness. The ship on which Hawn was hurt was being loaded when the grain loading equipment developed a slight defect. Hawn was put to work on it so that the loading could go on at once. There he was hurt. His need for protection from unseaworthiness was neither more nor less than that of the stevedores then working with him on the ship or of seamen who had been or were about to go on a voyage. All were subjected to the same danger. All were entitled to like treatment under law."

While it is true that the Supreme Court referred to the type of work done by Hawn as one reason for allowing him to recover for unseaworthiness, I do not believe performance of "ship's work" is a *sine qua non* to recovery on that theory. The Sieracki case, which Pope & Talbot, Inc., followed, gave as the reason for extending the unseaworthiness doctrine to certain nonseamen the similarity of such individuals to seamen as regards exposure to the same dangerous appliances, inability to bear the expense of injury, inability to discover or remove the dangerous condition, inability to recover for the loss from their employer, and inability to distribute the loss to the shipping industry as well as the shipowner. Seas Shipping Co. v. Sieracki, supra, 328 U.S. 85, 95–96, 66 S.Ct. 872, 90 L.Ed. 1099. Plaintiff meets these criteria.

My colleagues do not decide the validity of the disclaimer of liability in the pass, which was not shown to the plaintiff in any event. I find it has no legal effect. Moore v. American Scantic Line, 2 Cir., 121 F.2d 767.

Apart from its effect on the present litigants, I find our present decision most unfortunate, because it seems another instance of judicial meddling with jury verdicts with which the judges disagree. Further, this seems to me another instance, such as Avlon v. Greencha Holding Corp., 2 Cir., 239 F.2d 616, where originally the deductions made in attempted subservience to state law resulted in a federal inflexibility, and resulting inhumanity, which in my opinion would not be found in the state law itself. See Curren v. O'Connor, 304 N.Y. 515, 109 N.E.2d 605; Vorce v. Murray, 143 App. Div. 962, 128 N.Y.S. 528; Friedman v. Berkowitz, 206 Misc. 889, 136 N.Y.S.2d 81; Higgins v. Mason, 255 N.Y. 104, 174 N.E. 77 (dictum)—holding owners liable to licensees for active negligence. Compare Annotation, Liability to bare licensee as affected by distinction between active and passive negligence, 156 A.L.R. 1226. But whatever be the inconsistencies discovered or apprehended in local New York law, the admiralty law, I submit, should be, and is, clear cut. I would restore the jury verdict.