George Hargreaves and another, v. John Deacon, Administrator, etc.

*Injuries caused by leaving a dangerous place on private property unguarded.* Owners of private property are not responsible for injuries caused by leaving a dangerous place unguarded, where the person injured was not on the premises by permission, or on business, or other lawful occasion, and had no right to be there.

*Heard April 12. Decided April 23.*

Error to Wayne Circuit.

*E. C. Hinsdale* and *C. I. Walker,* for plaintiffs in error.

*S. Larned* and *Henry M. Cheever,* for defendant in error.

CAMPBELL, J.

The plaintiff below sued as administrator of his son, a child of tender years, who was killed by falling into a cistern on the premises of plaintiffs in error, which had been, as was claimed, left uncovered. The case has been so presented in this court as to raise but one substantial question, touching the liability for such an injury occurring on private property not immediately adjoining a highway, where the cistern was made for the lawful purposes of the owners, and the injury arose from its being left uncovered, and not from design to harm any one. There being some contradictory testimony, the case is to be regarded, so far as the present record is concerned, upon the theory of the plaintiff

below, that the child was permitted to go upon the premises without any special personal permission or invitation to himself, but by a tacit acquiescence of the occupants in not excluding such persons as saw fit to enter them.

The evidence in no way tends to show any right of passage arising out of the existence of a highway. And as it was admitted on the argument that no such highway existed, we need not discuss that point.

An important part of the argument was directed to the situation of the deceased as an infant of such an age that he was entitled to a different degree of care and caution than could be required in favor of older persons. It becomes necessary therefore to consider in what way that principle applies.

It will be found that its consideration belongs to such cases as involve a duty on the one hand so to act as not to injure others, and a capacity on the other to use reasonable care to avoid an injury which by means of such care would be avoidable. In other words, it involves the doctrine of contributory negligence in all civil cases. In criminal cases it involves, on similar principles, the capacity of the infant to so appreciate his duties and relations, to the law and to his fellows, as to be properly chargeable with such criminal blame as none can be guilty of without maturity of judgment, whether dull or bright in intellect.

We cannot hesitate to hold that in all cases where the responsibility of action or self-preservation is involved, it is both absurd and cruel, and plainly unlawful, to expect or demand of any human being judgment or caution not naturally to be expected from persons of his age and capacity. It is equally absurd to make mere intellect any controlling test in such matters. Children may differ very much in quickness, but the habits of caution and reflection come only with time and experience. The law does not

prohibit the free agency of minors from any theory that they have not, long before reaching majority, as much knowl-edge on many subjects as they need. It is because from youth itself, in spite of education and surroundings, there must always be expected a greater liability to business errors, and to imposition, and a greater lack of care in guarding against dangers of all kinds, than experience shows to be likely in manhood. Cases of early maturity are exceptional, and any rule of law, civil or criminal, which treats a child as anything but a child, is inhuman and barbarous. And any standard of liability which regards knowledge and mere intellectual capacity, without reference to age and the dis-cretion which is to be fairly expected of it, is not a fair standard, and cannot fail to do great wrong.

Counsel for plaintiffs in error did not controvert the jus-tice of this discrimination, and the question of its applica-bility is the only one arising on this branch of the case.

There is some danger in dealing with these questions, of confounding legal obligations with those sentiments which are independent of the law, and rest merely on grounds of feeling, or moral considerations. We feel, usually, more indignation at wrongs done to children, than at wrongs done to others. But the law has not usually given them civil remedies on any such basis. Nor does it usually, if ever, impose any duties on strangers towards them, resting entirely on the fact that they are children. Those who have any special dealings with them, as parents, teachers, and employers, incur obligations appropriate to their relations, and differing from those incurred towards others in propor-tion to the necessity of care and protection, and the risk of injury. But those who have no such relations with them are not liable for negligence in carrying on their own business, beyond what would be their liability to others, as well as children, who are equally free from blame.

If, for example, a grown person, coming upon the premises simply by the permission of the occupants, had fallen into this cistern without any negligence, by stepping where there was no apparent danger, he would in law have stood just where this child did. The injury might have happened, as in *Fisher v. Thirkell*, *21 Mich.*, *1*, from the insecurity of an apparently safe covering. We have searched diligently, and perhaps a little anxiously, to find legal support for a distinction, but there is no foundation for any in law, and we think there is none in any reason which should govern the action of courts of justice.

There is no difficulty at all in holding parties liable for any intentional mischief, however it may be covered up. If they prepare means of destruction for the malicious purpose of destroying life or inflicting injuries, there is no room for the application of the doctrine of negligence, and the act which they mean to bring about is none the less their act because brought about indirectly. If a pitfall is made with the intention of having human beings fall into it, or a spring-gun is set for the purpose of destroying them, or poison is mingled with a spring, or with food, for any similar purpose, fatal results would make the act willful homicide as plainly as if one had been thrust into the pit, or shot, or poisoned directly. But where injury arises to a person from the neglect of one, in doing his lawful business in a lawful way, to provide against accident, the question arises at once whether he was under any legal obligation to look out for the protection of that particular person, under those partiular circumstances. For the law does not require such vigilance in all cases, or on behalf of all persons.

The cistern in the present case seems to have been made, as is customary, with its top substantially on a level with the earth around it, and as is usual where reservoirs, vaults, sewer-openings, and the like are made where there is much

occasion for passage, and where an elevation might be inconvenient. Such openings require, for safety, a cover which will bear such pressure as is likely to be brought upon it, and keep passengers from falling in. If in a highway or sidewalk, the duty of protection extends to all persons who have a legal right to go there, or in other words to the whole public, and it depends on that right. If on private property, not open of right to the public, it applies less generally, and only to those who have a legal right to be there, and to claim the care of the occupant for their security, while on the premises, against negligence, or to those who are directly injured by some positive act involving more than passive negligence.

Cases are quite numerous in which the same questions have arisen which arise in this case, and we have found none which hold that an accident from negligence, on private premises, can be made the ground of damages, unless the party injured has been induced to come by personal invitation, or by employment which brings him there, or by resorting there as to a place of business or of general resort held out as open to customers or others whose lawful occasions may lead them to visit there. We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant.

We express no opinion concerning cases where the nature of the business is such as to present peculiar attraction to children, beyond other kinds of occupation. A person incurs no duties towards persons by not warning or driving them from his premises, and they go there, if mere volunteers, and without invitation, at their own risk. Counsel cited many authorities on the argument, which were in point. It

will suffice to refer to a few of the decisions bearing most directly on such a case as the present.

The cases cited from *10 Allen* draw the line very clearly. In *Sweeny v. Old Colony & Newport R. R. Co., 10 Allen, 368,* a railroad company was held liable to a person having occasion to cross the track on a crossing made by the company expressly to afford means of passing between two public roads, because having built the crossing and placed a flagman there for that purpose, and the flagman having assured the party injured he could cross in safety, there was more than a permission, and a distinct invitation to cross. In *Elliott v. Pray, 10 Allen, 378,* a trap-door being left open directly in the way of persons going up stairs to premises leased by the owners to other parties, one who was thus induced to enter on his way to the upper rooms, where he had lawful occasion to go, was held entitled to an action. But in *Zoebisch v. Tarbell, 10 Allen, 385,* where a person fell down a trap-door, where he had no lawful occasion to be, he was held to have no cause of action, and the previous railroad case was referred to for the statement of doctrine to sustain the latter decision. And in *Frost v. Grand Trunk R. W. Co., 10 Allen, 387,* a person who, being informed by a stranger that he would have to look after his baggage, left the car and fell into an open cattle-guard, was held not entitled to recover for the injury. These are fair illustrations of the general course of American decisions, as shown by other cases cited as well as some not referred to, and we have selected them as decided by the same court, and indicating therefore no clashing of opinions.

The English decisions are also quite uniform. The rapid increase in the use of dangerous machinery has made it necessary to legislate, and very stringent rules have been made in regard to fencing it. But these rules have not been regarded as applicable so as to change the common

law beyond their plain purpose. They have been construed liberally, but they have been held to be alterations and not affirmations of the common law which did not hold any one liable for the use of dangerous machinery, merely because it was dangerous to approach it. In *Coe v. Platt, 5 L. & Eq., 491, affirmed in 11 L. & Eq., 556,* a young woman being in a factory was injured by the machinery. The statute was passed for the safety of young people and children employed in working in factories, and while extending its protection to all other persons, only covered in terms the case where the machinery was in use for manufacturing. It was held in both courts that while the mill was not so employed the statute did not apply; and as there was no common-law liability for the damage, there could be no recovery.

In *Lygo v. Newbold, 24 L. & Eq., 507,* a woman whose goods were in charge of a freight carrier, was permitted by his cartman, while on the way, to get up and ride with him on the load. The cart breaking down, and an injury occurring both to her person and to the goods, it was held she could not recover for the personal injury, because she had no right upon the cart beyond the driver's permission, which was no contract, as his employment was for carriage of goods only, and the act was merely permissive and of favor. Pollock, Ch. B., intimated that, as her getting upon the cart without authority was a cause of the accident, she might even be liable to an action of trespass herself for the results of her act. But all agreed that she could have no recovery beyond the injury to the goods. So in *Southcote v. Stanley, 38 L. & Eq., 295,* a visitor in a house was held not entitled to recover for injuries from his opening a defective glass door; the court distinguishing between setting a pitfall with an intention to injure, and the result of a neglect whereby injury happens in such a case.

In *Stone v. Jackson, 32 L. & Eq., 349 (S. C., 16 C. B., 799),* where a woman going across private property from one highway to another fell into an excavation, and the case was allowed to go to the jury on the suggestion of the judge that the way where she went might possibly be a public footway, it was held the evidence had no tendency to show any public right, and the verdict was set aside.

The case of *Lunt v. London & N. W. R. W. Co., L. R., 1 Q. B., 277,* was somewhat like the case in *10 Allen, 368.* A person in a private way on one side of the track had occasion to go into a public way on the other side, which was guarded by a gate in charge of a gate-keeper, and the keeper who was in defendant's employ, being asked if the line was clear, said "Yes, come on," and opened the gate. Plaintiff drove his cart over, and it was struck by a train. It was held the keeper as the authorized agent for that purpose had invited plaintiff to cross, and the company was responsible. In deciding the case, care was taken not to decide what the consequences would have been had the gate-keeper not been acting in the line of his employment, when the duty to warn might, as intimated, have been one of humanity and not of agency.

In *Francis v. Cockrell, L. R., 5 Q. B., 184,* a person selling tickets to a racing stand which he had built and which fell and injured plaintiff, was held liable for his negligence by reason of the contract. In *Indermaur v. Dames, L. R., 2 C. B., 311,* in the Exchequer Chamber (affirming the decision of the common pleas, *L. R., 1 C. B., 274),* a journeyman gas-fitter, whose master had been employed to work on the premises and had sent the journeyman by appointment, was held to be included under the protection of the contract, and having been injured by falling through an unfenced shaft, he was allowed to recover. The decision went entirely on the ground that

he was lawfully there in the transaction of business, and not on bare permission.

In *Mangan v. Atterton, L. R., 1 Exch., 239,* a person who publicly exposed a machine on market-day was held not responsible where little boys meddled with it and one had his hand injured.

In *Holmes v. N. E. Railway Co., L. R., 4 Exch., 254,* a carman unloading coal was obliged to do it in a different way from the usual one, because the cells were full; and, while walking on the flags, which would have been necessary in the ordinary method, fell through a worn flag and was hurt. The court held he was entitled to the same protection as if he had been unloading in the ordinary way; and, as he was on lawful business which gave him a right to be there, he had an action.

In *Smith v. London & St. Katharine Docks Co., L. R., 3 C. B., 326,* a dock company was held liable to a person going on shipboard, for an injury caused by the insecure and careless placing of a gangway by their servants, on the ground that they were bound to furnish safe access to ships, and the misconduct was a direct breach of duty. On the same principle a vessel owner was held liable for the fall of a passenger down the unlighted and unguarded hatchway of a hulk which he used as a place of landing and embarking for his steamers.—*John v. Bacon, L. R., 5 C. B., 437.* But where the owners of docks which were private, and not public, had bridges on their premises over which they allowed persons to pass without objection, and one was injured by a bridge giving way for want of repair, it was held this permissive use gave no right to damages.—*Gautret v. Egerton, L. R., 2 C. B., 371.* In this case as in the others the distinction was taken between cases where there is only permission and those where there is a lawful right or an

25 MICH.—.2

inducement; and also between negligence and acts done with a willfully wrong design.

We have examined the decisions with some care, and can find no support to any doctrine which would authorize a recovery in the case before us.

We cannot help feeling much sympathy for the sad case of a child who was only following the natural and innocent curiosity of his age, when he met with the accident which caused his death. But there is nothing to indicate any wanton or inhuman disposition in the defendants, and no illegality in their management of their business, and they have violated no right of the plaintiff or his intestate.

The judgment must be reversed, with costs, and a new trial granted.

CHRISTIANCY, CH. J., and COOLEY, J., concurred.

GRAVES, J., did not sit in this case.