McINTYRE *v.* PFAUDLER VACUUM FERMENTATION CO.

1. NEGLIGENCE—DANGEROUS PREMISES—PLATFORM SCALES—DE-
FECTS—INVITATION TO USE—LIABILITY.
Plaintiff, an employé of a cartage company, while engaged in
hauling steel to defendant, drove upon a platform scale on
its premises, for the purpose of weighing his load, and was
injured by the platform's giving way. The platform was
adjacent to the premises of another corporation, the beam of
the scales being in its office; and the scales were used in
common by it and defendant. The actual ownership of the
scales seemed to be in some doubt. *Held,* that defendant's
liability did not depend on its ownership of the scales, but,
having impliedly invited plaintiff to use them, it was respon-
sible for defects which, by the exercise of due diligence, it
could have remedied.

2. SAME—EVIDENCE—QUESTION FOR JURY.
In an action for injuries caused by the giving way of a platform
scale, alleged to have been due to the rotten condition of the
supporting timbers, evidence examined, and *held* not to show
conclusively that the timbers were renewed within the time
claimed by defendant; making the question of its negligence,
in not discovering and remedying the defect, one for the
jury.

3. SAME—CONTRIBUTORY NEGLIGENCE.
Whether plaintiff was guilty of contributory negligence in
overloading the scales, or in not properly distributing his
load, was also for the jury.

4. SAME—INSTRUCTIONS.
Where all of the testimony in such action tended to show that
timbers of the character of those in question might reason-
ably be expected to last at least five years, an instruction
authorizing the jury to find defendant negligent "if ordinary
experience ought to have advised a reasonably prudent man
that the timbers would not remain sound for a period of a
little more than four years" was erroneous.

Error to Wayne; Brooke, J.   Submitted April 8, 1903.
(Docket No. 9.)   Decided June 23, 1903.

Case by John McIntyre against the Pfaudler Vacuum Fermentation Company, impleaded with the Detroit Safe Company, for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Orla B. Taylor* and *Gray & Gray,* for appellant.

*Hayes & Lawson* and *Tarsney & Fitzpatrick,* for appellee.

Carpenter, J. This is the second time this case has been before this court. The facts will be found fully stated in the former opinion, reported in 129 Mich. 385 (89 N. W. 39). On the second trial a verdict was directed in favor of the Detroit Safe Company, and the plaintiff obtained a verdict and judgment against the Pfaudler Company. The latter company asks this court to reverse that judgment, for several reasons. It is claimed that the trial court should have directed a verdict in its favor on several grounds, viz.: *First,* the obligation to keep the scales in repair rested, not upon it, but upon the Detroit Safe Company; *second,* the undisputed testimony conclusively proved that the defective timber which caused the injury was put in new in 1893, that it was then sound, and that no rule of diligence required its inspection before plaintiff was injured; *third,* it is claimed on this record, as on the former record, that plaintiff's load was too heavy for the scales, and not properly distributed, and that this was the occasion of plaintiff's injury; *fourth,* it is claimed that the court erred in instructing the jury in the particular hereafter mentioned in this opinion.

1. Did the obligation to keep the scales in order rest upon the Pfaudler Company, or upon the Detroit Safe Company? The platform of the scales was in a private alley, about 12 feet wide, situated between the building occupied by the Pfaudler Company, on the east, and that occupied by the Detroit Safe Company, on the west. The beam of the scales was in the office of the Detroit Safe Company. The scales were originally the property of the

Detroit Safe Company, and it put these scales in the alley in 1890, while it had possession of the same under a lease from the Wesson estate.    March 1, 1895, the safe company assigned this lease to James Sargeant, and on April 10, 1895, Sargeant assigned the same to the Pfaudler Company.    At the time the lease was transferred to Sargeant, the safe company also delivered a bill of sale to him of "all of the property known as the tank department of the Detroit Safe Company, including all tools and machinery and materials belonging to said department."    To this bill of sale were annexed schedules and inventories of the property conveyed.    These did not mention the scales. After the transfer, the scales were looked after and controlled by the safe company, though both the safe company and the Pfaudler Company used the same, without asking the permission of either.    It is claimed by defendant, and its manager testified, that the scales remained the property of the Detroit Safe Company.

In our judgment, the liability of the Pfaudler Company does not depend on its ownership of the scales.    At the time of the injury, plaintiff was an employé of the Shedden Cartage Company, engaged in conveying a load of steel to the Pfaudler Company.    He was on the premises of the Pfaudler Company, using the scales, to fulfill a contract in which said company and himself each had an interest.    Under these circumstances, defendant owed to plaintiff the obligation which an occupier of premises owes to one doing business with him on those premises by his invitation.    The law which determines this obligation seems to have been settled in the case of *Indermaur* v. *Dames*, L. R. 1 C. P. 274, L. R. 2 C. P. 311.    Plaintiff in that case was injured on defendant's premises, while there "on lawful business, in the course of fulfilling a contract in which both the plaintiff and the defendant had an interest."    Said the court:

"We are to consider what is the law as to the duty of the occupier of a building with reference to persons resorting thereto in the course of business, upon his invitation,

express or implied. The common case is that of a customer in a shop; but it is obvious that this is only one of a class. * * * The class to which the customer belongs includes persons who go not as mere volunteers, or licensees, or guests, or servants, or persons whose employment is such that danger may be considered as bargained for, but who go upon business which concerns the occupier, and upon his invitation, express or implied. And with respect to such a visitor, at least, we consider it settled law that he, using reasonable care on his part for his own safety, is entitled to expect that the occupier shall, on his part, use reasonable care to prevent damage from unusual danger which he knows or ought to know, and that, where there is evidence of neglect, the question whether such reasonable care has been taken, by notice, lighting, guarding, or otherwise, and whether there was contributory negligence in the sufferer, must be determined by a jury as matter of fact. * * * There was no absolute duty to prevent danger, but only a duty to make the place as little dangerous as such a place could reasonably be, having regard to the contrivances necessarily used in carrying on the business."

It is true that in the foregoing case the occupier knew of the alleged defect. But the principle of the decision would hold him responsible for defects not known to him, if due diligence on his part would have discovered and remedied them. Cooley, Torts, p. 605; *Campbell* v. *Sugar Co.*, 62 Me. 552 (16 Am. Rep. 503); *Henkel* v. *Murr*, 31 Hun, 28; *Pittsburgh City* v. *Grier*, 22 Pa. St. 54 (60 Am. Dec. 65).

2. Did the evidence warrant the jury in finding that due diligence would have discovered and remedied the defective timber before plaintiff's injury? Defendant claims that the testimony conclusively proves that the scales were thoroughly overhauled, and new timbers put in, in October, 1893, and that the testimony conclusively proves that, according to experience, these timbers would not decay as early as January, 1898, the date of plaintiff's injury, and therefore that defendant was entitled to a verdict. It is true that one Adolph Marschner, an expert scalemaker, does testify that these scales were rebuilt of new timber in

1893. But he also testifies that Mr. Paige, the manager of the safe company, was around at that time. Mr. Paige testifies that he does not know whether or not the timbers were taken out, and new ones put in, and that he supposes these timbers were put in in 1890. The bill presented by Mr. Marschner's employer, for his services, was for "taking out, repairing, putting in, and repairing wagon scale." An account was introduced in evidence, containing a charge against the safe company for lumber furnished by a lumber company for repairing these scales. That bill contains no items for timber answering to the description of what was claimed to be defective. We cannot, therefore, say that the fact that these timbers were put in in 1893 was conclusively established. We think the testimony not only failed to prove conclusively that these timbers were put in in 1893, but left the date when they were put in very uncertain. While Mr. Paige testifies that he thinks they were put in in 1890, at the time the scales were placed in the alley, he also testifies that he was away at that time, and therefore his testimony cannot be regarded as conclusive. He also testifies that "the scale ought to last five or six or seven years; it depends upon circumstances. It might last ten or fifteen years." Whether proper diligence on the part of the defendant should have led to an examination of the timber, and discovery of the defect, therefore, was, in our judgment, properly submitted to the jury.

3. Whether or not plaintiff's load was too heavy or improperly distributed was, according to the decision on the former hearing, a question for the jury. We do not think any such different question is presented by this record as to demand a different decision.

4. The court charged the jury:

"If you find either that the sticks were not put in new in 1893, or that ordinary experience ought to have advised a reasonably prudent man that sticks of timber of that character, situated as they were, would not remain sound for a period a little more than four years, then the negli-

gence of the defendant the Pfaudler Company will have been established, provided you determine that the accident occurred by reason of the rotten character of the stringer."

All the testimony in the case tended to prove that such timber would last at least five years. There was no testimony which would warrant the jury in finding that "ordinary experience ought to have advised a reasonably prudent man that sticks of timber. of that character, situated as they were, would not remain sound for a period a little more than four years." It is not true, as contended by plaintiff's counsel, that the fact, if it was a fact, that these timbers decayed in four years and three months, would afford "evidence that common experience had shown that they would not last as long or longer than that." A single instance is no evidence of common experience. The jury were therefore invited by this charge to base their verdict upon facts or information not contained in the sworn testimony, and the charge was therefore erroneous.

Complaint is also made of remarks made by plaintiff's counsel in his argument to the jury. These remarks were improper. As the case must be reversed for the error already pointed out, we refrain from deciding whether or not these remarks constituted reversible error.

Judgment reversed, and a new trial ordered.

The other Justices concurred.