LAUCHERT v. AMERICAN S. S. CO. et al.
Civil Action No. 2696.

District Court, W. D. New York.
May 7, 1946.

704

Desmond & Drury, of Buffalo, N. Y., for plaintiff.

Richards & Coffey, of Buffalo, N. Y., for defendant American S. S. Co.

McKeehan, Merrick, Arter & Stewart and George William Cottrell, all of Cleveland, Ohio, and Arthur E. Otten, of Buffalo, N. Y., for defendant Pittsburgh S. S. Co.

KNIGHT, District Judge.

This is a motion, under Rule 56 of Rules of Civil Procedure of the District Courts of the United States, 28 U.S.C.A. following section 723c, made by defendant, Pittsburgh Steamship Company, to dismiss the second cause of action of plaintiff's amended complaint.

In this cause of action plaintiff alleges that this defendant, a West Virginia corporation, was and is the owner and operator of the merchant steam vessel William J. Filbert, which, at time of accident, was moored adjacent to the codefendant's steamer United States Gypsum in a harbor in Ecorse, Michigan; that, on March 26, 1944, while plaintiff's intestate, a steward and member of the crew employed by the codefendant on said vessel Gypsum, and an "invitee" of this defendant, was lawfully using a gangplank erected between said two vessels, he was caused to fall therefrom and sustain injuries from which he died; that said fatal accident was caused without any fault of the intestate but was caused by the negligence of this defendant "in failing to provide a safe and sufficient passageway; causing or permitting said passageways to become highly dangerous; failing to provide safe and sufficient safeguards; maintaining and operating said vessel Filbert in an unsafe and unseaworthy manner with unsafe and unseaworthy equipment and these and other acts both negligent and in violation of the rules and customs of navigation." Par. Ninth.

Plaintiff further alleges:

"Eleventh: This second cause of action is brought under the laws of the State of Michigan governing death by tortious act, more particularly, Number 297 of the Public Acts of 1939 of the State of Michigan."

After general denial and setting up as separate defenses, the intestate's "negligent acts" and "wilful misconduct" (Par. XII) and his assumption of risks (Par.

XIII), the moving defendant for a further separate and complete defense alleges that, on March 26, 1944, and prior thereto, its steamer William B. Dickson, without cargo, was lying starboard side to the north side of the large slip, heading in at the shipyard of the Great Lakes Engineering Works at Ecorse, Michigan; that, on same date and prior thereto, its said steamer Filbert, without cargo, was lying starboard side to port or outboard side of said steamer Dickson, also heading into said slip, the Dickson and Filbert being abreast of each other; that, on same date and prior thereto, said steamer Gypsum, a self-unloading vessel owned and operated by codefendant, was lying port side to port side of said steamer Filbert, heading out of said slip, "also without cargo but in water ballast so that the level of her spar deck was several feet below the level of the spar decks of the Steamers Filbert and Dickson" (Par. XIV); that said vessels had been and were lying at shipyard for winter repairs by said Engineering Works as per contract; that, in connection with such repairs, "the said shipyard had certain lumber and other materials owned by (it) and rigged a wooden gangplank therefrom between the deck of the Steamer Filbert and the Steamer United States Gypsum and another gangplank between the deck of the Steamer Dickson and the deck of the Steamer Filbert, access to the Steamer Dickson being over a ramp on the dock, also owned by the shipyard; that said ramp and gangplanks were rigged to afford ingress and egress to employees of the shipyard in going to and from the vessels for the purpose of making winter repairs; that there was no connection between the repair work going on on board the Steamer United States Gypsum, owned by (codefendant), and the repair work going on on board the Steamer Dickson and Filbert, or either of them, owned and operated by (this moving defendant)." Par. XV.

It is further alleged (Par. XVI) that codefendant's employees, including intestate, were employed on the Steamer Gypsum and used the means provided by the shipyard in going to and from it across the decks of the Steamer Filbert and Dickson to the dock.

It is then alleged (Par. XVII) that neither codefendant nor intestate was "an agent, servant, employee or invitee" of this defendant; that intestate was, at most, "a gratuitous licensee" to whom this defendant "did not owe the duty of ordinary care in furnishing a means of ingress and egress" to the said Steamer Gypsum across the decks of the Steamers Dickson and Filbert; that it "owed no duty to plaintiff's intestate except to refrain from wilful and wanton acts, which might proximately cause or contribute to (his) death."

The motion for summary judgment by the defendant Pittsburgh Steamship Company, based on the pleadings and two affidavits, is made on the grounds: (1) That this court lacks jurisdiction over the subject matter of plaintiff's claim against said defendant; (2) that plaintiff has failed to state a claim or cause of action against it.

Rule 56 provides: "(c) The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

It is said in Engl v. Ætna Life Ins. Co., 2 Cir., 139 F.2d 469, 472, that "the history of the development of this (summary-judgment) procedure shows that it is intended to permit 'a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried.' 3 Moore's Federal Practice 3175."

Annexed to the notice of motion are the following two supporting affidavits:

James Brock Stewart, this defendant's assistant superintendent of construction, in his affidavit verified March 22, 1946, alleges the relative position of the three vessels Dickson, Filbert and Gypsum, as it is alleged in Paragraph XIV of this defendant's separate and complete defense. He then alleges: "That access to and from said vessels when they were lying alongside of each other in the slip referred to was af-

forded by a ramp from the dock of the Great Lakes Engineering Works leading up to the deck of the Steamer Dickson, then a wooden gangplank from (its) deck * * * to the deck of the Steamer Filbert and another wooden gangplank from (its) deck * * * to the deck of the Steamer * * * Gypsum; said ramp and gangplanks being owned by the said Great Lakes Engineering Works. Said gangplanks * * * were rigged and installed by the direct employees of the (latter) for the use of (its) employees * * * in going to and from the shipyard on board the vessels referred to for * * * making repairs. That several times during the progress of the work on board said vessels as Assistant Superintendent of construction in the employ of (this defendant * * * (deponent) was in and around the shipyard and said Steamers Filbert and Dickson and there was no connection whatever between the repair work going on on board (those) Steamers * * * owned by (this) defendant * * * and the repair work going on on board the Steamer * * * Gypsum, owned by the (codefendant). That employees of (codefendant), including * * * plaintiff's intestate * * * had nothing whatever to do with any of the winter repair work or fitting out operations going on on board the said Steamers Filbert and Dickson and * * * when he would go ashore and return aboard and cross the decks of (said) Steamer * * * it was in connection with his own personal business or in behalf of his employer (codefendant), and not in connection with any matter, cause or thing having to do with (said) Steamer * * * or (this) defendant * * *."

Harry Starkweather, a ship carpenter and foreman employed by Great Lakes Engineering Works at its shipyard at Ecorse, Michigan, on March 26, 1944, in his affidavit verified February 22, 1946, after describing the position of the three vessels and the gangplanks as in the preceding affidavit, alleges: "Said gangplanks between the decks of the Steamers Dickson and Filbert and between the decks of the Filbert and * * * Gypsum were rigged and installed by the direct employees of the Great Lakes Engineering Works under the supervision of deponent for the use of employees of the said * * * Engineering Works in going to and from the shipyard on board the vessels referred to for the purpose of making winter repairs; that as far as (both defendants) were concerned, there was no connection whatever between repair work being done by the Great Lakes Engineering Works going on on board the Steamers Filbert and Dickson and the repair work going on on board the Steamer * * * Gypsum; that the Steamer * * * Gypsum after fitting out in the spring of 1944 and when she was ready to depart on or about the 1st day of April, 1944 * * * those on board constituting members of her crew dismantled the gangplank from the deck of the Filbert to the deck of the * * * Gypsum, whereupon the planking, handrails, etc., were placed on the deck of the Steamer Filbert."

"Rule 56(e) * * * provides, inter alia, as follows: 'Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.' The rule requires that affidavits in support of a motion for summary judgment must contain evidence which would be admissible as testimony at trial." Dickheiser v. Pennsylvania R. Co., D.C., 5 F.R.D. 5, 9.

Under this test, the two affidavits are admissible. The complaint alleges: "Eighth: That * * * on or about the 26th day of March, 1944, while the plaintiff's intestate, an invitee of the defendant, Pittsburgh Steamship Company, was lawfully using a gangplank erected between the vessel 'Filbert' and 'Gypsum,' he was caused to fall therefrom causing the injuries from which he died." From the moving defendant's answer and the two affidavits it clearly appears that the Steamer Gypsum, owned and operated by intestate's employer and on which he "was employed as a steward and member of the crew" (Par. Second), was the outmost of three vessels lying alongside each other in a "large slip" for winter repairs to be made by the Great Lakes Engineering Works; that the gangplank from which intestate fell was owned

by the latter and was rigged and installed by the latter's employees for their use in going to and from the shipyard for the purpose of making the said repairs; that the repair work on the Filbert, owned by this defendant, was wholly independent of the repair work on the adjacent Gypsum, owned and operated by the intestate's employer.

Assistant Superintendent Stewart, in his said affidavit, alleges: "That the Steamer Filbert arrived at said shipyard on or about the 9th day of December, 1943; was placed in drydock * * * on or about December 24, 1943, and was removed (therefrom) and placed in the large slip on the outboard side of the Steamer Dickson, also without cargo, on or about the 5th day of January, 1944. During her stay at the shipyard general winter repairs were made and she departed said shipyard on or about April 1, 1944."

■ Plaintiff alleges that his intestate was an "invitee" of this defendant, lawfully using the gangplank when he was caused to fall therefrom. Since this defendant did not own or possess the gangplank, since it was not being used in its business and had been rigged and installed by the employees of the Great Lakes Engineering Works to afford them access to the Steamer Gypsum to make winter repairs thereon, plaintiff's intestate was not an "invitee" of this defendant. Plaintiff does not allege that his intestate's death was caused by any injury suffered on the Steamer Filbert. He alleges that intestate fell from the gangplank. Par. Eighth. This was while intestate was boarding his own vessel, the Gypsum. Par. Third. He then alleges (Par. Ninth) that this defendant was negligent in failing to provide for the intestate "a safe and sufficient passageway; causing or permitting said passageways and gangplanks to become highly dangerous; failing to provide safe and sufficient safeguards; maintaining and operating said vessel in an unsafe and unseaworthy manner with unsafe and unseaworthy equipment." The last allegation concerning the vessel is irrelevant because the fatal accident did not occur thereon. The other allegations of negligence are also irrelevant because this defendant owed the intestate no duty to provide for him a safe gangplank.

The intestate was not an "invitee" of this defendant. The latter did not own or possess the gangplank or use it in its business. The affidavit of its Assistant Superintendent Stewart expressly alleges that, if the intestate fell from the gangplank as alleged, he was using it solely upon his own personal business or that of his employer or of other persons who were strangers to this defendant "but not at any request or direction or invitation of (this) defendant * * * and not upon or in connection with any business or transactions of or in any way connected with (this) defendant * * * or its said Steamer Filbert or its said Steamer Dickson or otherwise."

■ In the notice of motion, answering affidavits were demanded but none was ever served. The court can therefore rely on the allegation of fact in the affidavits presented by this defendant. Seward v. Nissen, D.C., 2 F.R.D. 545; Board of Public Instruction for Hernando County, etc., v. Meredith, 5 Cir., 119 F.2d 712, 713; Fletcher v. Krise, 73 App.D.C. 266, 120 F.2d 809, 812; Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715, 718.

■ In 45 Corpus Juris, at page 882, it is said: "Also, liability for negligence in respect of certain property resulting in injury to a person invited to use that property rests upon the person extending the invitation where, although not the owner, he is in control of the property, or even where he is neither the owner nor in control. (As authority for the last proposition the author cites McIntyre v. Pfaudler Vacuum Fermentation Co., 133 Mich. 552, 95 N.W. 527). Ordinarily, however, a person who is not the owner and is not in control of certain property is not liable for negligence in respect of such property."

Since the alleged accident occurred in the State of Michigan and plaintiff alleges (Par. Eleventh) that his second cause of action is brought under the laws of that State, more particularly under Number 297 of its Public Acts of 1939, that statute must be now considered.

No. 297 of Public Acts 1939 of the State of Michigan is entitled "An Act requiring compensation for causing death and injuries resulting in death by wrongful act, neglect or default; to prescribe the measure of damages recoverable and the distribution thereof; and to repeal inconsistent acts." It provides in part as follows:

"Sec. 1. Be it enacted by the senate and house of representatives of the state of Michigan, whenever the death of a person or injuries resulting in death, shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall hereafter be brought only under this act."

█ The statute requires the plaintiff to establish some "wrongful act, neglect or default" on the part of defendant.

In the Michigan case of McIntyre v. Pfaudler Vacuum Fermentation Co., 133 Mich. 552, 95 N.W. 527, supra (decided in 1903), the plaintiff, an employee of a cartage company, while engaged in hauling steel to defendant, drove upon a platform scale on its premises to weigh his load and was injured by the platform's giving way. The platform was adjacent to the premises of another corporation, the beam of the scales being in its office; and the scales were used in common by it and defendant. The actual ownership of the scales seemed to be in some doubt.

Although the Court reversed a judgment in favor of plaintiff and granted a new trial, it said:

"In our judgment the liability of the Pfaudler Company does not depend on its ownership of the scales. At the time of the injury, plaintiff was an employe of the Shedden Cartage Company, engaged in conveying a load of steel to the Pfaudler Company. He was on the premises of the Pfaudler Company, using the scales to fulfill a contract in which said company and himself each had an interest. Under these circumstances defendant owed to plaintiff the obligation which an occupier of premises owes to one doing business with him on those premises by his invitation." 133 Mich. at page 554, 95 N.W. at page 528.

In the instant case, plaintiff's intestate at the time of the fatal accident was not upon the premises of the defendant Pittsburgh Steamship Company. Whether construed as such regards liability makes no difference. He was upon a gangplank owned, rigged and installed for the sole use of its own employees by the Great Lakes Engineering Works and was using the gangplank to board his own vessel. He was therefore not an "invitee" of this defendant and it owed him none of the duties alleged in Paragraph Ninth of the complaint.

Was plaintiff's intestate a licensee?

█ "A person is a licensee where his entry or use of the premises is permitted by the owner or person in control thereof, or by operation of law, so that he is not a trespasser, but is without any express or implied invitation. He therefore occupies a position somewhere between that of a trespasser and that of an invitee." 45 Corpus Juris, pp. 788, 789.

Since the gangplank from which plaintiff's intestate fell was owned, rigged and installed by the Great Lakes Engineering Works for use of its employees in making winter repairs on the codefendant's steamer Gypsum and since the intestate fell while he "was boarding said vessel" (Par. Third of complaint), further discussion would be superfluous had not this moving defendant in its separate and complete defense alleged (Par. XVII) "that as between plaintiff's intestate and (this) defendant * * * (he) was, at most, a gratuitous licensee to whom (this) defendant * * * did not owe the duty of ordinary care in furnishing a means of ingress and egress to the said Steamer * * * Gypsum across the decks of the Steamers Dickson and Filbert; and that therefore (this) de-

fendant * * * owed no duty to (him) except to refrain from wilful and wanton acts, which might proximately cause or contribute to (his) death."

This defendant's learned counsel argues these propositions at length in his brief and cites authorities from several jurisdictions.

Under the Michigan death statute upon which plaintiff relies (Par. Eleventh), there can be no recovery unless the death was "caused by wrongful act, neglect or default" of this defendant. No. 297 of Public Acts 1939, sec. 1.

"Where an action for wrongful death is brought in a state other than the state in which the injury causing death occurred, it is the well-settled rule that * * * all matters of substantive law, such as the right of action, the nature of the right, and the availability to the defendant of particular defenses, are governed by the lex loci, the law of the state in which the injury occurred and where the cause of action arose." 25 Corpus Juris Secundum, Death, § 28. Spokane & Inland E. R. Co. v. Whitley, 237 U.S. 487, 494, 495, 35 S.Ct. 655, 59 L.Ed. 1060, L.R.A. 1918F, 736; Boyd v. Frenchee Chemical Corp., D.C., 37 F.Supp. 306, 308.

Under the Michigan law, " 'Negligence' is absence or want of care under the circumstances." Young v. Lee, 310 Mich. 42, 47, 16 N.W.2d 659, 661. "The mere fact that an accident happens does not establish negligence on the part of defendants, as the doctrine of res ipsa loquitur is not followed in this State." Mitchell v Stroh Brewery Co., 309 Mich. 231, 235, 15 N.W.2d 144, 146; School District of City of Ionia v. Dadd, 308 Mich. 220, 228, 13 N.W.2d 268.

As to invitees it is said "that one who invites, expressly or by implication, another upon his premises is duty-bound to exercise ordinary care and prudence to render the premises reasonably safe for the visit." Keech v. Clements, 303 Mich. 69, 73, 5 N.W.2d 570, 571. "It is a general proposition that liability for an injury due to defective premises ordinarily depends upon power to prevent the injury and there-fore rests primarily upon him who has control and possession." Dombrowski v. Gorecki, 291 Mich. 678, 681, 289 N.W. 293, 294.

As to persons who are not invitees, it was said in the leading case of Hargreaves v. Deacon, 25 Mich. 1, in reversing judgment in favor of an administrator recovered for the death of his infant son:

"Cases are quite numerous in which the same questions have arisen which arise in this case, and we have found none which hold that an accident from negligence, on private premises, can be made the ground of damages, unless the party injured had been induced to come by personal invitation, or by employment which brings him there, or by resorting there as to a place of business or of general resort held out as open to customers or others whose lawful occasions may lead them to visit there. We have found no support for any rule which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or other relations with the occupant." 25 Mich. at page 5.

The Court further said:
"A person incurs no duties towards persons by not warning or driving them from his premises, and they go there, if mere volunteers, and without invitation, at their own risk." 25 Mich. at page 5.

In Formall v. Standard Oil Co., 127 Mich. 496, 503, 86 N.W. 946, 949, the Court quotes the last sentence with approval and then says:

"The soundness of that case (Hargreaves v. Deacon, 25 Mich. 1, supra) has never been questioned by this court. On the contrary, it has been regarded by the profession as establishing the rule which must be followed."

In Douglas v. Bergland, 216 Mich. 380, 185 N.W. 819, 821, 20 A.L.R. 197, the Court quotes with approval the first paragraph above-quoted from the Hargreaves case and says that this case "has been frequently cited by this and other courts." The Court also quotes with approval the following language of 29 Cyc. 449:

"The rule is well settled that an owner of premises owes to a licensee no duty as to the condition of such premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril, or wantonly or willfully cause him harm. The licensee enters upon the premises at his own risk and enjoys the license subject to its concomitant perils." 216 Mich. 380, 185 N.W. 821, 20 A.L.R. 200.

See also Boner v. Eastern Michigan Power Co., 210 Mich. 142, 148, 177 N.W. 225.

The general rule as to licensees has been stated as follows:

"The general rule is that there is no affirmative duty of care with respect to a mere licensee and no duty to protect him * * *. The most usual statement of the general rule is that no duty exists toward a mere licensee except to refrain from willfully or wantonly injuring him, but the courts frequently add to this exception, or state in place thereof, some of the other well recognized exceptions, such as the duty not to set traps for a licensee or expose him to hidden perils, or to use care to avoid injuring him after his presence is or should be discovered or not to injure him through active negligence." 45 Corpus Juris, pp. 796, 797.

"A trespasser or mere licensee coming on board a vessel must take the premises as he finds them, and he comes on board at his own risk. No duty is owed by a shipowner to a mere licensee or trespasser other than to refrain from willfully injuring him, or knowingly allowing him to run into danger; and no liability attaches to the owner or the vessel for an accidental injury to a licensee." 58 Corpus Juris, p. 310.

These rules regarding licensees are followed in many jurisdictions other than the State of Michigan. Zanone v. Oceanic Steam Navigation Co., 2 Cir., 177 F. 912; The Sudbury, D.C., 14 F.2d 533; Kosba v. Bank Line, Ltd., D.C., 46 F.2d 119; Fox v. Warner-Quinlan Asphalt Co., 204 N.Y. 240, 97 N.E. 497, 38 L.R.A.,N.S., 395, Ann.Cas.1913C, 745; Metcalfe v. Cunard Steamship Co., Ltd., 147 Mass. 66, 16 N.E. 701.

From the undenied allegations in the two affidavits submitted by the defendant Pittsburgh Steamship Company it appears as a fact that plaintiff's intestate while walking on the gangplank at time of fatal accident was not this defendant's "invitee." It also appears that he was not a licensee. Whether or not he was a "gratuitous licensee" of this defendant, the conclusion is the same, viz., that plaintiff has failed to state a claim or cause of action against the defendant, Pittsburgh Steamship Company, upon which relief can be granted.

Plaintiff alleges against this defendant a cause of action based on negligence. The relation of plaintiff's intestate to this defendant at time of accident is a "material fact." As to this there is no genuine issue. The uncontroverted allegations in the two affidavits in support of the motion for summary judgment clearly disclose that the intestate was not an "invitee" of this defendant. They also justify the conclusion that he was not a licensee. If he was a "gratuitous licensee," plaintiff has not so alleged. He has alleged in Paragraph Ninth the duties he claims this defendant owed to his intestate, but these are duties owing to an "invitee" and not to a "gratuitous licensee." The motion for summary judgment should be granted. United States v. Freeman, D.C., 37 F.Supp. 720, 722; Fresh Grown Preserve Corp. v. United States, 6 Cir., 143 F.2d 191, 195.

The motion of the defendant Pittsburgh Steamship Company, under Rule 56, for summary judgment dismissing plaintiff's second cause of action is granted.