VINCENT MURTHA, an Infant, by ANNIE V. MURTHA, His Guardian ad Litem, Appellant, v. EDWARD A. RIDLEY, Respondent.

ANNIE V. MURTHA, Appellant, v. EDWARD A. RIDLEY, Respondent.

Trial — failure to move to dismiss complaint or for direction of verdict at close of case a concession that there is a question for jury — negligence — injury to child of tenant — sufficiency of evidence to require submission to jury of question whether yard was appurtenance to tenement house — erroneous dismissal of complaint.

1. Upon trial of a question of fact the omission by defendant to move to dismiss the complaint or for a direction of a verdict at the close of the entire case constitutes a concession, an admission upon his part that there was evidence which justified a submission of the case to the jury. The Appellate Division in the absence of such a motion had no power to reverse the judgment and hold as a matter of law that there was no evidence in the case to establish plaintiff's case.

2. In an action against the owner of premises to recover for personal injuries alleged to have been sustained by the child of a tenant, by reason of a defective condition in a back yard in which he was playing, testimony that tenants of the building hung their clothes in the yard; that children of the different families residing in the building played therein; that the daughter of a tenant had planted flowers and vegetables therein; that the janitress kept it clean and removed the debris and that tenants were obliged to go in the yard to fasten lines to the clothes pole, is sufficient to make it a question of fact whether this yard had been used for so long a time by the tenants and their children as to constitute it a place used with the knowledge

and consent of the landlord in common by all tenants, thus charging him with the duty of keeping it in a reasonably safe condition. A dismissal of the complaint, therefore, by the Appellate Division was error.

*Murtha* v. *Ridley*, 196 App. Div. 61, modified.

(Argued January 27, 1922; decided February 3, 1922.)

APPEAL, in each of the above-entitled actions, from a judgment entered July 13, 1921, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint. The first action was to recover for personal injuries alleged to have been sustained by plaintiff through the negligence of defendant. The second action, brought by the mother of the plaintiff in the first, was to recover for loss of services resulting from his injuries.

*Gilbert D. Steiner* for appellants. The trial court properly submitted to the jury the questions of defendant's duty to keep the areaway in a reasonably safe condition and whether he negligently failed to do so, and there was ample evidence to support the verdict of the jury in favor of plaintiff. (*People* v. *Davis*, 231 N. Y. 60; *Boyles* v. *Blankenhorn*, 220 N. Y. 624; *Shaefer* v. *Houck*, 183 App. Div. 283; 1 McAdam on Landlord & Tenant [4th ed.], 284, 291; *Doyle* v. *Lord*, 64 N. Y. 432; *Stevens* v. *Taylor*, 111 App. Div. 561; *Canavan* v. *Stuyvesant*, 7 Misc. Rep. 113; *Berras* v. *Keane*, 191 App. Div. 947; 231 N. Y. 566; *Schmidt* v. *Cook*, 12 Misc. Rep. 449; *Mashkin* v. *Childs*, 146 App. Div. 174; *Clarke* v. *Welsh*, 93 App. Div. 393; *Loucks* v. *Dolan*, 211 N. Y. 237.)

*George F. Hickey, R. Waldo MacKewan* and *William Butler* for respondent. The defendant was not in duty bound to keep in repair the areaway in the yard of premises such as are here presented. (*Jaffe* v. *Harteau*,

56 N. Y. 398; *Frank* v. *Mandel*, 76 App. Div. 416; *Schick* v. *Fleischauer*, 26 App. Div. 210; *Kushes* v. *Ginsberg*, 99 App. Div. 417; *Tallman* v. *Murphy*, 120 N. Y. 345; *Dollard* v. *Roberts*, 130 N. Y. 273; *O'Dwyer* v. *O'Brien*, 13 App. Div. 570; *Walsh* v. *Frey*, 116 App. Div. 527; *Schroech* v. *Bliss*, 46 App. Div. 502; *Margolius* v. *Uldberg*, 88 N. Y. Supp. 1048; *Endig Co.* v. *Cook*, 91 N. Y. Supp. 745; *Finkelstein* v. *Shlanowsky*, 76 Misc. Rep. 500.) The defendant was under no duty of any kind to the plaintiff with respect to the condition of the rear yard or the coping around the areaway other than to refrain from committing any intentional, willful or negligent affirmative act calculated to injure him. (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 79; *Fox* v. *Warner-Quinlan A. Co.*, 204 N. Y. 240; *Cusick* v. *Adams*, 115 N. Y. 55; *Nicholson* v. *Erie R. Co.*, 41 N. Y. 525; *Birch* v. *City of New York*, 190 N. Y. 397; *Victory* v. *Baker*, 67 N. Y. 366; *Larmore* v. *C. P. I. Co.*, 101 N. Y. 391; *Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Steiger* v. *Van Sicklen*, 132 N. Y. 499.) This yard was not provided for use by the children as a place for them to play and the defendant should not be held liable for an injury resulting from such unauthorized use. (*Strobel* v. *Liebmann*, 197 N. Y. 348; *McAlpin* v. *Powell*, 70 N. Y. 126; *Miller* v. *Woodhead*, 104 N. Y. 471; *Mayer* v. *Laux*, 18 Misc. Rep. 671.)

CRANE, J. On May 10, 1917, the plaintiff, seven years of age, who lived with his mother, a tenant of the defendant, at No. 799 East One Hundred and Fifty-sixth street, New York city, was injured by falling into an areaway in the back yard of the premises. The cement coping around the edge of the areaway broke and gave way. Three tenants occupied the premises. The ground floor was tenanted by the plaintiff and his mother; the second floor by Mrs. Schwartz and her eight children; and the top floor by Mrs. Frankel and her daughter.

1922.]            Opinion, per CRANE, J.          [232 N. Y. 488]

The depth of the yard on the easterly side was nineteen feet, on the westerly side eighteen feet, and the width in the rear nineteen feet, running a little bit diagonally. The areaway was about nine feet long, three feet wide and three or four feet deep, in which were windows giving light and air to the cellar. A passageway led through the cellar to doors in the rear and up a flight of steps into the yard. A door led from the plaintiff's apartment on the ground floor out into the yard, and there were two gates in the fences which were always open and unlocked. The plaintiff had been at play in the yard when his mother called and he stepped toward the areaway, standing upon the coping and talking to her. The coping gave way and he was injured. This coping had been cracked and broken about two weeks before as men, employed by the defendant, were working on a new clothesline pole in the rear of the yard. A crack in this cement coping was then made, wide enough to permit the entrance of two or three fingers. There is evidence to show that defendant's agent, present at the erection of this pole, and the janitress in charge of the building, knew or should have known of this defective condition. No point is made of the sufficiency of the evidence to prove this defective condition and notice thereof to the defendant or his agents.

Verdicts were found for the plaintiffs which upon appeal have been reversed. The Appellate Division were of the opinion that there was no evidence to show that this plaintiff had any right in the yard. The trial justice left it to the jury as a question of fact whether or not this yard was used in common by the tenants, possession thereof retained by the landlord, and the plaintiff at play in the yard, as a matter of right, making proper use thereof.

At the outset it may be noted that no motion was made to dismiss the complaint or for a direction of a verdict at the close of the entire case. This was a con-

[232 N. Y. 488]            Opinion, per CRANE, J.                    [Feb.,

cession, an admission upon the part of the defendant that there was evidence which justified a submission of the case to the jury. The Appellate Division in the absence of such a motion had no power to reverse the judgments and hold as a matter of law that there was no evidence in the case to establish plaintiff's rightful use of the yard. (*People* v. *Davis*, 231 N. Y. 60.)

But further than this, upon an examination of the evidence it appears that there was sufficient testimony submitted upon the part of the plaintiffs to make it a question of fact whether or not this yard had been used for so long a time by the tenants and their children as to constitute it a place used with the knowledge and consent of the landlord in common by all the tenants.

The children of the tenants had used it as a playground. Tenants hung their clothes in it. At one time the daughter of Mrs. Frankel planted flowers and vegetables in the yard. Mrs. Neach, the janitress, kept the yard and areaway clean and removed the debris. The tenants were obliged to go into the yard and fasten the lines to the clothes pole.

The defendant said that children had been prohibited to make use of the yard or play in it, but this prohibition was never communicated, so far as the evidence shows, to any of the tenants.

Annie V. Murtha testified: " Q. And when you got up those steps from the cellar into the back yard, was there any doorway or hatchway there in the back yard to get up? A. Yes, open the door and then walk up, and then open the other door and go out. Q. Was that any easy door to open? A. Yes. Q. Did you ever see any children go in or out that door? A. Sure. Q. Whose children did you see open that door? A. Schwartz. Q. What was the yard used for, Mrs. Murtha, if you know? A. We went out and hung clothes out there. There was a little clothes line and my son would go out there to play. Q. Did the other children play in that yard? A. Yes,

sir. Q. Did the other people use the yard for hanging clothes? A. Yes, sir. Q. Do you know whether or not the members of that family used the yard (meaning the Frankel family, tenants on the third floor)? A. Yes, had flowers, and went down there and planted radishes and lettuce and different things in summer. Q. How about the people on the second floor? Did they ever use the yard, to your knowledge? A. To hang clothes. Q. How many children did she have, do you know? A. Oh, I guess maybe about seven or eight. Q. Did they play down in the yard sometimes? A. Yes, sir, with my son. Q. So, so far as you know, everybody in the house to some extent used that yard? A. Yes, sir. Q. How would people from other apartments get out in the yard? A. They would go out in the hall and come down the stairs and go out that way, open the door and go out, or they could come in from the front, or there was two gates there. They could come in the gates; if they wanted to get in there, there was four entrances to the yard."

There is some evidence, therefore, in our opinion, establishing this yard as an appurtenance to this apartment house, used in common by the tenants, retained in the possession and control of the landlord charging him with the duty of keeping it in a reasonably safe condition. (*Doyle* v. *Lord,* 64 N. Y. 432.)

The Appellate Division reversed the findings of the jury that the defendant was negligent and dismissed the complaint. The dismissal for the reasons above stated was error. The Appellate Division, however, could have granted a new trial on the evidence. The judgments, therefore, in so far as they grant a dismissal of the complaints, should be modified, and a new trial granted, without costs to either party.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND and ANDREWS, JJ., concur; McLAUGHLIN, J., absent.

Judgments accordingly.