**George AVLON, Appellant,**

v.

**GREENCHA HOLDING CORP.,
Appellee.**

**No. 23, Docket 22449.**

United States Court of Appeals
Second Circuit.

Argued Oct. 10, 1956.

Decided Dec. 10, 1956.

Clark, C. J., dissented.

See also, 232 F.2d 129.

Ramey & McKelvey, New York City, Edward J. Bazarian, New York City, for appellant; Deane Ramey, New York City, of counsel.

William J. Tropp, New York City, for appellee; Arthur C. Parker, New York City, of counsel.

Before CLARK, Chief Judge, and HAND and SWAN, Circuit Judges.

SWAN, Circuit Judge.

■ This is an action to recover for personal injuries sustained by the plaintiff by reason of the collapse of an iron grating, on which he was standing, attached to the outside of a building owned by the defendant. The action was commenced in a court of the State of New York and was removed to the federal court on the ground of diversity of citizenship. At the close of the plaintiff's case, the court granted a motion by the defendant to dismiss the complaint for failure to prove a prima facie case. On appeal it is contended that there were issues of fact which should have been submitted to the jury. The correctness

of this contention turns on whether there was evidence on which the jury could have found that the plaintiff had the status of an invitee rather than a bare licensee while standing on the iron grating; and the answer to this question is controlled by New York law, since federal jurisdiction rests on diversity.

The plaintiff was a cook employed by a cafeteria company which occupied as lessee the first floor and basement of defendant's two story building located at 3195 Broadway, New York City. The dining room of the cafeteria was separated from the kitchen by a wall or partition through which was a connecting doorway. The main entrance to the dining room was from the street level of Broadway. In the rear wall of the dining room was a door marked "Exit," with a red electric light above it. At the rear of the kitchen was another door similarly marked and lighted. Each of these "Exit" doors opened onto an iron grating or platform which was affixed to the outside of the building.[1] The platform was approximately 5 feet wide and 35 feet long and was suspended over an areaway some 25 feet below the floor level of the cafeteria. No steps led from the platform to the ground but at one end of the platform iron stairs led to the roof of an adjacent building. From the roof other stairs led to a rear doorway into a bowling alley which was located in the second story of the defendant's building. At the front of the building there was an entrance from the street to the bowling alley used by customers.

On the date of the accident, June 1, 1948, the plaintiff had gone from the kitchen to the dining room, using the doorway in the partition which separated them. On leaving the men's wash room, which is in the dining room, he went through the "Exit" door in order to "have a smoke" and "get some fresh air." As he proceeded along the platform to return to the kitchen a section of the iron grating collapsed under his weight and he was precipitated to the areaway below. There was testimony that the plaintiff had used the platform similarly on three or four prior occasions; that other employees sometimes so used it; that patrons of the cafeteria occasionally used the platform and fire escape stairs as a way of reaching the bowling alley; and that the president of the defendant had the opportunity to see such use. He denied knowing that either employees or patrons of the restaurant ever used the fire escape. No proof was offered as to what caused a section of the platform to collapse. The plaintiff testified, as did also the president of the defendant, that the platform appeared to be in good condition.

Without a formal opinion the trial judge, upon argument of the defendant's motion to dismiss, ruled that the evidence proved that the plaintiff was no more than a bare licensee while using the outside platform, and, as such had established no right to recovery, since the defendant was guilty of no affirmative act of negligence. Under New York law the ruling was correct. We can find nothing in the evidence which could support a jury's verdict that the plaintiff was an invitee. The outside structure was not within the premises leased to the plaintiff's employer. The lease, which was the "Standard Form of Store Lease" of the Real Estate Board of New York made no reference to it.[2] At best

1. In his complaint the plaintiff refers to this structure as a "fire escape and platform which, with the knowledge and consent of the said defendant, was regularly used by persons lawfully in and upon said premises as a passageway to and from divers parts or portions of the said premises."

2. Paragraph 4 contains the statement: "Landlord has not conveyed to Tenant any rights in or to the outer side of the outside walls of the building of which the demised premises form a part, * * *." In its context the statement should doubtless be restricted to a prohibition against attaching signs, wires, etc., to the outside walls. If relevant at all to the contention that the tenant had permission to use the platform as a passageway between the dining room and the kitchen, its implication is adverse rather than helpful.

the jury could have found no more than that the landlord had notice that the tenant's employees and patrons occasionally used the platform as a passageway or as a place to smoke and get a breath of outside air, and acquiesced therein without protest. But there is no evidence of any invitation or inducement on the part of the landlord to make such use of it, and mere consent to such use does not indicate that the plaintiff was an invitee.[3] The existence of the "Exit" signs with red lights above showed clearly that those doorways were intended for emergency exists to the fire escape; they could not reasonably be found by the jury to serve as an invitation to use the platform as a passageway except in case of emergency. The plaintiff knew it was a fire escape, and in an affidavit reporting the accident said he "fell through fire escape platform." The platform had no steps leading to the ground but did lead to the roof of an adjoining building, and the only purpose it could have had was to provide an escape in case of need. Indeed, it conformed to the statutory definition of a fire escape in section 4(16), Multiple Residence Law of New York, McK.Consol.Laws, c. 61-B.

Vega v. Lange, supra, note 3, held squarely that the use of a fire escape for other purposes, with the owner's knowledge and consent, does not make the user an invitee. A Court of Appeals case which strongly supports the ruling below is Walker v. Bachman, 268 N.Y. 294, 197 N.E. 287. There the plaintiff was the child of a tenant of the defendant, who owned a two-family house in the rear of which were two garages facing a cement space intended for use only for automobiles entering or leaving the garages. The plaintiff's father did not rent or use either of the garages and had no right to use the cement yard as appurtenant to the apartment leased to him. The cement yard was enclosed by a parapet 14 inches high. While playing with her brother in the yard the infant plaintiff stumbled over the parapet and sustained injuries. There was evidence that the children over a considerable period of time had, to the knowledge of defendant, played in the yard. The trial court submitted to the jury, over the defendant's exception, the question whether the infant plaintiff was an invitee or a mere licensee. The plaintiff had a verdict and the judgment entered thereon was affirmed in the Appellate Division, 243 App.Div. 514, 276 N.Y.S. 1018. The Court of Appeals reversed and dismissed the complaint, stating that the child was in the back yard with the implied consent of the defendant, but she was there for her own purposes only and the defendant's acquiescence did not become an invitation.

It seems to us that Judge Pound's gloss upon the distinction between "invitee" and "licensee" in Vaughan v. Transit Development Co., 222 N.Y. 79, 82, 118 N.E. 219, still stands: "Long-continued acquiescence in such use does not become an invitation. The law does not penalize good nature or indifference nor does permission ripen into right." See discussion in Carbone v. Mackchil Realty Corp., 296 N.Y. 154, 158, 159, 71 N.E.2d 447. The supposed departures from the rule as to the effect of acquiescence disappear upon analysis of the facts. In Murtha v. Ridley, 232 N.Y. 488, 492, 134 N.E. 542, 543, the "children of the tenants had used it [the enclosed space] as a playground. Tenants hung their clothes in it. At one time the daughter of Mrs. Frankel planted flowers and vegetables in the yard. Mrs. Neach, the janitress,

---

3. In Vega v. Lange, 248 App.Div. 521, 290 N.Y.S. 736 at page 738 the court said: "The mere consent to the use to which the infant plaintiff put the fire escape did not indicate that she was an invitee," citing as authority Vaughan v. Transit Development Co., 222 N.Y. 79, at page 82, 118 N.E. 219, in which Judge Pound said: "If plaintiff had had no permission to come on the premises he would have been a trespasser. If he had been there by invitation or on lawful business of interest to both parties he would have been an invitee. But he was there by permission, for his own convenience and his status was that of a bare licensee."

kept the yard and areaway clean and removed the debris. The tenants were obliged to go into the yard and fasten the lines to the clothes pole." On this evidence the court said 232 N.Y. on page 493, 134 N.E. on page 543, that there was some evidence "establishing this yard as an appurtenance to this apartment house." We understand by "appurtenance" a part of the premises the use of which was by implication affirmatively granted to the tenants. In Walker v. Bachman, supra, [268 N.Y. 294, 197 N.E. 288] the facts of which we have just stated, the court said that the "child was in the backyard with the implied consent of the defendant; but she was there for her own purposes only, and the defendant's acquiescence did not become an invitation," citing Vaughan v. Transit Development Co., supra, and distinguishing Murtha v. Ridley, supra, because there the evidence "established the yard as an appurtenance to the apartment house." Whatever "appurtenance" may mean, obviously it requires more than "continued acquiescence." In Silverberg v. Schweig, 288 N.Y. 217, 218, 42 N.E.2d 493, the following testimony, if believed, constituted an express invitation. The plaintiff wished to connect an aerial between his father's store and the defendant's apartment, and to do so "he desired access to a fire escape platform on such multiple dwelling and to obtain such access asked the defendant Herman for a key to an apartment which abutted the platform; that such defendant could not find a key and told the infant plaintiff to go up on the roof of his father's store and then onto the fire escape ladder." The court held that this evidence created a case for the jury, citing Bowers v. City Bank Farmers Trust Co., 282 N.Y. 442, 26 N.E.2d 970, 971, which had held that a child was an "invitee" upon the roof of an apartment house where, not only the tenants' children habitually played and which the tenants used "as a place to dry clothes"—as in Murtha v. Ridley, supra—but also where the janitor "on many occasions he dressed himself as a cowboy and came to the roof when the children were at play and there in their presence practiced at throwing a lariat and performed tricks with a whip."

■■ Admittedly, it is always difficult to forecast what will be the position of the court of another jurisdiction; but it appears to us that up to the present time there has been no contradiction in the decisions of the New York courts as to the proposition that acquiescence alone is not invitation, and there is no evidence of anything more in the case at bar.

Judgment affirmed.

CLARK, Chief Judge (dissenting).

As I read the controlling New York cases they require the jury to determine whether the plaintiff was an invitee or not. In Murtha v. Ridley, 232 N.Y. 488, 134 N.E. 542, the seven-year-old son of the downstairs tenant of a three-family building was injured playing in the back yard of the premises when the cement coping on which he was standing gave way and he fell into the areaway below. There was evidence that a door led from his mother's apartment into the yard, and that other tenants had access to it from the street and from the cellar. The children of all the tenants used the yard as a playground and the mothers hung clothes in it. The janitress kept it clean. The defendant testified that the children were prohibited from playing there, but it was not shown that this had been communicated to them. On this evidence the trial court submitted the issue of negligence to the jury, which found for the plaintiff. The Appellate Division, 196 App.Div. 61, 187 N.Y.S. 433, reversed on the theory that the plaintiff was a mere licensee. The Court of Appeals reinstated the jury verdict, saying: "There is some evidence, therefore, in our opinion, establishing this yard as an appurtenance to this apartment house, used in common by the tenants, retained in the possession and control of the landlord charging him with the duty of keeping it in a reasonably safe condition." 232 N.Y. 488, 492, 134 N.E. 542, 543,

per Crane, J. Walker v. Bachman, 268 N.Y. 294, 297, 197 N.E. 287, 288, on which my brothers rely, distinguishes this case by saying that in it "there was evidence which established the yard as an appurtenance to the apartment house used in common by the tenants and retained in the possession and control of the landlord. Nothing of the sort appears here. Cf. American Law Institute, Restatement of the Law of Torts, § 360."[1]

Here the evidence disclosed that (1) there was easy access to the platform not merely from the first-floor tenants' premises here involved, but also from the bowling alley on the second floor; (2) employees and customers of both tenants used the platform for recreation and egress; (3) the landlord knew of such use and did not object to it; (4) the owner had exclusive possession and control of the platform. The jury could have found that the platform was an appurtenance, the use of which was impliedly rented to plaintiff's employer; and under the Murtha rule it could have found the landlord liable to the plaintiff for failing to use due care to keep the appurtenance reasonably safe.

My brothers appear to assume a New York rule peculiar to fire escapes; and they rely heavily on Vega v. Lange, 248 App.Div. 521, 290 N.Y.S. 736, which attempted to establish such a rule. There the Appellate Division held that tenants on a fire escape with the consent of the landlord cannot be invitees, because the invitation extends only to use of such structures for emergency exit. Vega v. Lange, supra, 248 App.Div. 521, 290 N.Y.S. 736, can be distinguished from the present case because here the platform was not so designed that tenants and their employees would know at a glance that it was meant only for use

in case of fire. But even assuming the platform to be a fire escape within the meaning of the Vega decision, that case has been disapproved by the New York Court of Appeals. In Silverberg v. Schweig, 288 N.Y. 217, 42 N.E.2d 493, the Appellate Division, 260 App.Div. 658, 23 N.Y.S.2d 599, citing Vega v. Lange, supra, 248 App.Div. 521, 290 N.Y.S. 736, had reversed a jury verdict for a plaintiff injured on defendant's fire escape while connecting a radio aerial. Defendant's agent had given the plaintiff permission to be there, but the Appellate Division ruled that fire escapes were only for emergency use and that such permission was not enough to make plaintiff an invitee. The Court of Appeals reversed Per Curiam, without citing Vega v. Lange, but saying: "There was evidence, however, sufficient to present a question of fact whether, when the infant plaintiff used the drop ladder as a means to reach the fire escape, he did so as an invitee to whom the defendants owed the duty to maintain the ladder in a reasonably safe condition for such use." Silverberg v. Schweig, supra, 288 N.Y. 217, 219, 42 N.E.2d 493, 494.

The Vega rule is an unnatural way to determine the existence of a jury issue and leads to anomalous results. My brethren make it clear that had Avlon been injured while using this platform to retreat from a fire there would have been a jury issue; since he used the platform for normal travel, jury trial is denied. The platform on which he was hurt was clearly marked "Exit"; why should not the jury pass on the question of whether or not the landlord impliedly invited the plaintiff's presence there? Why should Avlon's retreat (or that of the second-floor bowlers) have to be accompanied by flames in order that a jury may pass upon the injuries resulting

---

1. 2 Restatement, Torts § 360, comment c (1934), reads: "The rule stated in this Section applies not only to the hall, stairs, elevators and other approaches to the part of the land leased to the lessee as a flat, office or room in a tenement or boarding house, but also to such other parts of the land or building to the use of which by the express or implied terms of the lease the lessee is entitled, usually in common with other lessees, such as a bathroom in a boarding house and the roof or yard of a tenement building or apartment house."

from a defective passageway? Or why should a landlord be excused upon resort to the mere word "fire escape"? To make this fundamental right turn on such barren semantics I find disturbing. I would remand for full trial.